Hillsborough, |
June 2, 1925. |

WILSON L. CHARLTON *v.* ARSENE BRUNELLE.
MAUD E. SIMPSON *v.* SAME.

In an action of deceit by a tenant against a landlord for withholding at the time of making the lease information that a wall of the building leased was defective, evidence that at the time of construction the defendant expressed the opinion that the wall would hold, and his testimony at the trial that he knew of no defects, are not conclusive proof that he did not know of the defect.

Suspicion on the part of a landlord that premises which he is leasing contain a defect dangerous to their occupancy is the legal equivalent of knowledge of the defect.

If a landlord knows that there is a defect in premises which he is leasing, but does not know or suspect that it is dangerous, his failure to mention it to his tenant is not deceit.

CASE, for deceit in the renting of premises. These are the same cases reported in 81 N. H. 13. Transferred by *Sawyer*, J., upon the defendant's exceptions, which, together with the facts, will appear in the opinion.

*Doyle & Doyle (Mr. Paul J. Doyle* orally), for the plaintiffs.          ₀

*Warren, Howe & Wilson (Mr. Charles B. McLaughlin* orally), for the defendant.

SNOW, J. These cases were tried together. The plaintiff declared originally upon the defendant's negligence, and the first trial was of that issue only. Upon the former transfer, it appearing that the plaintiffs became tenants of the defendant after the construction of the defective premises, it was held that negligence did not lie, for the reason that it is the law of this jurisdiction that "the landlord is not liable to the tenant for the mere faulty condition of the leased premises in the absence of express warranty or deceit." *Charlton* v. *Brunelle*, 81 N. H. 13, 15, 16. As there had been no claim at the trial that the defendant knew of the defect, it was pointed out that the dishonest state of mind essential to the maintenance of an action for deceit was wholly wanting; that neither knowledge of what the construction of the building was, without knowledge that it was faulty, nor negligence in discovering the defect, supplied this essential element. Subsequent to the argument on that transfer the plaintiffs filed in the superior court a motion that the issue of the

defendant's knowledge be submitted to a jury. This motion, treated as an amendment of the writ to an action for deceit, was granted and the cases have again been tried with a special verdict for the plaintiffs upon the issue submitted. They now come here upon the defendant's exceptions to the charge, to the refusal to charge and to the denial of its motion in each case for a nonsuit and for a directed verdict.

The defendant was a contractor and builder of twenty-six years' experience. He was unable to read the building regulations, and when his work involved municipal requirements, as it did here, it was his custom to rely upon information obtained from the building inspector. He obtained a permit to alter or enlarge a store upon the street floor of his three-story brick block by the construction of a one-story ten-foot addition at the rear. With his application therefor he filed a sketch of the proposed addition which called for cutting doors through the rear wall upon the first story of the building. He later filed a plan of a concrete beam designed to hold up the entire wall at the second story, and explained to the inspector that he intended to support this by means of lally columns set upon the brick basement wall. The wall was twelve inches thick. The defendant was told by the inspector that he would have to reinforce this wall at the points of bearing by brick piers at least twenty-eight inches square, and cap them with stone or large heavy iron plates. He took issue with the inspector as to the necessity of such reinforcement, claiming that the wall had held for years and should be sufficient now. It was explained to him that such piers were necessary because the weight which had been distributed the entire length of the wall was, under his plan, to be concentrated at the bases of the columns. To this explanation he replied, "Yes, yes, yes." He proceeded to shore up the building and to remove the brick wall of the first story. When it was later discovered that he was planning, in disregard of the instructions, to place the lally columns upon cast-iron plates resting directly upon the twelve-inch wall without reinforcement, his attention was again called to the lack of strength of the wall to carry the concentrated load. He once more insisted that it was strong enough, stating to the inspector that it was his building and that if it fell down it was his business and no one's else. He was then advised to employ a competent architect or engineer to inspect, and to help him in making his alterations. This advice he disregarded. The inspector or his assistant visited the premises once every two weeks until the collapse occurred, but no further objec-

tions were made to the defendant's plan, although it was never expressly approved or authorized. The defendant followed the municipal regulations so far as materials were concerned. The differences between the defendant and the inspector related solely to the strength of the basement wall at the base of the columns to carry the redistributed load. Three months after the weight of the building was let down upon the lally columns, the rear wall of the main building at the place of reconstruction collapsed, causing the damage to the plaintiffs' goods for which recovery is sought. Of the five supporting columns the two end ones remained in place while the three intermediate ones were precipitated into the basement. Some of the plates were broken in pieces. There was no evidence or claim, at the trial, that the plates contained latent defects.

I. The denial of the defendant's motion for a directed verdict raises the question whether there was evidence from which it could be found that he had knowledge of the dangerous defect which caused the plaintiffs' damage. The defendant contends (1) that there was no evidence from which the causal defect could be determined; and (2) if such defect were conceded to be the weakness of the supporting basement wall, as contended by the plaintiffs, that the evidence did not support a finding of knowledge thereof on the part of the defendant.

1. The defendant was of the opinion that the weight "crushed the columns down and the plate went down between the bricks and crushed the bricks." The city's inspector expressed the view upon direct examination that the walls "just simply caved and the column went down through the plates." Upon cross-examination he stated his conclusion to be "that those iron plates were not strong enough, on the wall, and the wall did not hold them up, and the plates·broke in two, and the columns went right down through the wall." An expert consulting engineer employed by the city testified that, based on the building requirements, the overstress upon the brick wall at the base of each of the lally columns exceeded 400 per cent. While expressing himself in doubt as to whether the supporting plate or the wall was the first to give way, he stated, "I rather imagine that the load on the brick wall underneath those lally columns was sufficient to have cracked the wall in the vicinity of the column base; the minute that occurred it brought undue stress on the column base which was working pretty near its limit to overcome that, anyway; the minute that broke, it reduced bearing area under the column so that the pressure became so excessive on the brick work, it simply

punctured right through." It is argued that on this evidence it was mere conjecture to conclude that the collapse was due to the weakness of the wall rather than to a latent flaw in the base plates, of which it was not claimed the defendant could have had knowledge. This argument was based principally upon the use of the word "imagine" by the engineer. The witness had examined the premises immediately following the accident for the purpose of advising the city as to the cause of the collapse. It may be inferred that it was the intention of the witness, although his words were inapt, to express the opinion that the wall was the first to give way. The absence of any evidence of defects in the plates and the affirmative evidence of the insufficiency of the wall justified his conclusion. It is clear that it could be found from the quoted evidence that the weakness of the wall, if not the primary, was a contributing cause of the collapse.

2. The defendant's position that the plaintiffs failed to maintain their burden of proving the defendant's actual knowledge of this defect is based upon the alleged controlling effect of his own statements. These consist of his expressed view at the time of the reconstruction that the wall would hold and his affirmative testimony at the trial that he knew of no defects. The error of the defendant's position lies in the conclusive effect sought to be accorded to this evidence. It was important but not conclusive. It could be refuted by proof of facts from which the defendant's knowledge could be inferred. Such was the fact that he had been told by one upon whom he customarily relied for such information that the twelve-inch wall was not strong enough to carry a concentrated load which under the minimum requirement called for brick piers twenty-eight inches square. The fact that the wall was subjected to a stress four times that permitted by building requirements, considered with the further fact that the defendant was a contractor and builder of twenty-six years' experience, was evidence from which his actual knowledge of the defect could be found. The plaintiff, Simpson, testified that on the morning following the accident the defendant said to him, "I know what the trouble was. The sill [the wall] across the basement was not strong enough; I thought it would hold up until I got ready to cement the basement and then I was going to strengthen the wall"; also that the defendant at the same time agreed to settle with him when he should ascertain what his damage was. If the jury believed the testimony of this witness they were warranted in finding that the defendant at the time of the lease had in contemplation the strength-

ening of the wall. If the jury so found it was not mere conjecture to infer from this fact so found that he knew that the defective wall was inadequate to support the unusual burden, that it might yield under the concentrated load, and therefore that it presented a concealed danger. It was a sufficient basis for this action that the defendant in fact suspected that the premises which he was leasing to the plaintiffs contained a defect dangerous to their occupancy. Such a suspicion was the legal equivalent of knowledge of the defect. *Shackett* v. *Bickford*, 74 N. H. 57. As the evidence warranted such a finding, the defendant's contention that the plaintiffs failed to maintain the burden of proof upon this issue cannot be sustained.

II. The case was submitted to the jury upon the single question of fact: "Did the defendant knowingly conceal from the plaintiffs the defective construction of the building, intending to deceive them?" to which they were directed to return an answer "yes" or "no." The defendant requested that the jury be instructed that in order to answer "yes" to this question they must find that the defendant not only actually knew there was a defect, but that "the defect was one likely to cause injury or damage to these plaintiffs." The request was refused and, instead, the jury were instructed that if the defendant knew that the building was defectively constructed, then reasonable men must agree that by his silence he intended to deceive the plaintiffs. Exception was taken to the denial of the request and to the charge.

Manifestly, an action of deceit could not be maintained for the failure to disclose a defect which was not likely to result in injury or damage to the plaintiffs. 34 L. R. A. 827, *note*. It was essential to the plaintiffs' case that the defendant knew or suspected that the defect was fraught with some danger to the plaintiffs or their property. Notwithstanding it could be found that the defendant knew that the construction of the building was defective, yet if he did not believe or suspect that the defect was dangerous his silence did not amount to deceit. This presented an issue of fact for the jury. It was therefore error to instruct the jury that proof of mere knowledge of a defect was conclusive of the defendant's liability. The language of the charge did not make it clear to the jury that their finding of the defendant's knowledge must include knowledge of the dangerous character of the defect. The defendant was entitled to the instruction requested. It follows that there must be a

*New trial.*

All concurred.