HUBERT A. ROBINSON v. ETHEL M. THOMAS AND CHARLOTTE RENTAL
CO., INC.

(Filed 7 November, 1956.)

**1. Appeal and Error § 38—**

Exceptive assignments of error not supported by argument, reason, or authority are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

**2. Pleadings § 24—**

Evidence in support of allegations in the complaint which have been stricken on motion is properly excluded.

**3. Landlord and Tenant § 11—**

In an action by a tenant against a landlord for injuries received as a result of defective condition of the premises, evidence as to other properties owned by the landlord and as to repairs of the premises made after the injury, is properly excluded.

**4. Negligence § 19b(1)—**

Nonsuit is proper in an action for negligent injury if the evidence, considered in the light most favorable to plaintiff and giving him the benefit of all permissible inferences therefrom, fails to show a violation of some legal duty owed plaintiff by defendants and that the injury was a proximate result of that breach of duty.

**5. Landlord and Tenant § 11—**

The landlord is liable to the tenant for injuries received as a result of defective condition of the premises only if the defect was latent and the landlord had actual or constructive knowledge of such dangerous defect and failed to give warning thereof, and the tenant was not aware of the danger and could not by the exercise of ordinary diligence have discovered it.

**6. Same—Evidence held insufficient to show liability of landlord or rental agent for injury from latent defect in premises.**

This action was instituted by a tenant against the landlord and the landlord's rental agent for injuries received when a porch floored with tile over concrete gave way with the tenant because of the rotting of the supporting timbers. The space beneath the porch was enclosed so that the defect was latent. The evidence disclosed that the landlord acquired the property some years after the construction of the building and thereafter employed the rental agent, that both the landlord and the rental agent had knowledge of the development of cracks in the floor of the porch, and that the landlord refused to repair the cracks, but there was no evidence that either knew of latent and dangerous defects in the construction and maintenance of the porch floor which caused it to give way, and wrongfully concealed such knowledge from defendant. *Held:* Nonsuit was proper.

**7. Same—**

The fact that the landlord advises a tenant to go ahead and use a porch floor pending repairs to cracks therein does not amount to a representation

that the premises were safe so as to charge the landlord with liability `for injuries received when the porch gave way because of a latent defect, the porch being firm at the time of the advice and there being no evidence of knowledge of the landlord of any latent defect.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Campbell, J.,* 6 February, 1956 Term, MECKLENBURG Superior Court.

Civil action against the owner and her rental agent to recover for personal injuries resulting from a fall when the porch collapsed as the plaintiff sought to enter the front door of the apartment he occupied as tenant. The essential allegations of negligence in the plaintiff's complaint are: "The collapse of the floor had been imminent and readily apparent to any person having a knowledge of the manner in which it had been constructed. . . . The defendant, Ethel M. Thomas, and the defendant, Charlotte Rental Company, Inc., knew of the manner in which the aforesaid building had been constructed and knew, or should have known the inherent inadequacy and dangerous nature of the method by which the porch had been constructed and was being maintained by them, and knew, or had the means of acquiring knowledge of the actual condition of the porch at the time they were notified of the cracks. . . . That the defendants were negligent in erecting and maintaining a building so constructed as rental property and in allowing him (plaintiff) and his family to occupy the premises as a tenant, in failing to advise the plaintiff of the imminently dangerous condition of the porch floor, and in failing to make proper repairs thereto or to advise the plaintiff that they would not be made." And that the defendants were negligent in allowing the plaintiff to continue to use the porch pending repairs.

Before answer, the defendants moved to strike certain allegations of the complaint. The plaintiff duly excepted to the order allowing the motion.

The defendants by answer entered a general denial of all allegations of negligence. Particularly, they denied any knowledge (1) of defects in the construction of the building, (2) that discoverable defects developed during use which rendered it unsafe, and (3) that if such defects developed the plaintiff should have known of them and if, after such knowledge, he continued to occupy the premises he assumed the risk incident to further occupancy, and that he was guilty of contributory negligence which was the proximate cause or one of the proximate causes of his injury.

The evidence tended to show that plaintiff occupied the downstairs apartment on the east side of the building which contained three other apartments—one opposite the plaintiff's on the first floor, and two

others on the second floor. In front of the plaintiff's apartment was a porch 5 x 12 feet, with a surface of tile set in concrete. The tile was about ¾-inch thick and the concrete base approximately one inch thick. The slab of tile and concrete constituting the porch floor was not reinforced. It rested on wood sleepers 2 x 6 or 2 x 8 inches. The porch was a part of plaintiff's apartment. Entrance through the front door required its use. Entrance through the side door did not. Under the porch floor there was an open or excavated space approximately 10 feet deep. This space was enclosed by masonry walls with no opening for ventilation. That the open space under the porch existed could not be discovered by casual inspection. Although the plaintiff had access to the basement under his apartment during his two years occupancy, he did not know in what manner the porch floor was supported. He testified: "When I first moved in there was a long crack from near the south corner of the porch over towards the east side of the front door. There was one other crack that came in afterwards. I believe that crack had started when I moved in. The one from the south corner . . . stayed like it was. The shorter one is the only one that got longer. It did not get any wider. . . . From the time I moved in . . . until immediately before my fall the porch was firm. The cracks in the tile were about 1/16 of an inch wide." The plaintiff did not know whether there was any crack in the concrete. He noticed near the door a depression developing which was visible when there was water on the porch. About two months after plaintiff moved in he had a conversation with Mr. Drake, agent of the corporate defendant, and Mr. Drake said, "that he had known about the porch and had made reports and that Mrs. Thomas said she wasn't going to spend any more money on those places."

On 1 July, 1953, Mr. Drake came to the apartment, looked at it, and said he would have someone out to fix it on the 7th (the 4th of July holidays intervening) and in the meantime for the plaintiff to go ahead and use it.

The plaintiff's wife testified she called an employee of the corporate defendant some time in May, 1953, complained that the cracks were unsightly and that she was ashamed for her friends to see them. Mr. Drake replied that he would see what he could do about it.

On 6 July, 1953, the plaintiff and his son, age 13 years, crossed the porch for the purpose of entering the apartment through the front door. As the plaintiff opened the screen and stepped to one side to permit the son to unlock the door, a part of the porch floor suddenly gave way beneath plaintiff's feet and in the fall he sustained painful, severe and permanent injuries. The evidence tended to show that the wooden sleepers supporting the porch had decayed because of lack of ventilation and the plaintiff's weight caused the collapse of the floor.

The plaintiff adversely examined Mrs. Thomas, the individual defendant, and Mr. Drake and Mr. Spearman, agents of the corporate defendant. The following is the substance of the testimony developed by these examinations: The apartment building was constructed in 1923 for Mr. W. E. Thomas, husband of the individual defendant. Mr. Thomas died in 1944 and at that time Mrs. Thomas became the owner. Immediately thereafter she employed the Charlotte Rental Company, the corporate defendant, as her rental agent. The company collected the rents and looked after repairs. Mrs. Thomas knew nothing about the manner in which the building was constructed. In fact, she never at any time examined the building and she had no knowledge of its condition. There had been no changes in the porch structure since Mrs. Thomas became owner. Prior to that time the corporate defendant had nothing whatever to do with the building.

At the close of plaintiff's evidence, the court sustained the defendants' motion for nonsuit. From the judgment accordingly, the plaintiff appealed, assigning errors.

*Carpenter & Webb,*

*By: William B. Webb, for plaintiff, appellant.*

*Helms & Mulliss, Fred B. Helms, Wm. H. Bobbitt, Jr., for defendant Ethel M. Thomas, appellee.*

*Cochran, McCleneghan & Miller,*

*By: F. A. McCleneghan, for defendant Charlotte Rental Company, Inc., appellee.*

HIGGINS, J. The plaintiff abandoned his exceptive assignment to the order striking parts of the complaint by his failure to support the assignment by argument, reason, or authority. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 544. The plaintiff offered evidence relating (1) to the stricken allegations of the complaint, (2) to other properties owned by the defendant, Mrs. Thomas, and (3) to the repairs made by the defendants after the plaintiff's injury. All the foregoing evidence was properly excluded.

Left for consideration is the sole question whether the evidence when considered in the light most favorable to the plaintiff, giving him the benefit of all permissible inferences which may be drawn from it, presents a case for the jury. If the evidence, when so considered, shows the defendants violated some legal duty they owed to the plaintiff and his injury and damage were the proximate result of that breach of duty, then he is entitled to have the jury pass upon his cause. Otherwise it ends here. Admittedly, there was no contract or guaranty the tenant would be safe in the leased premises. The law does not imply such a

contract. The test of the landlord's liability is given in *Harrill v. Refining Co.*, 225 N.C. 421, 35 S.E. 2d 240:

> "Ordinarily, the doctrine of *caveat emptor* applies to the lessee; *Gaither v. Hascall-Richards Steam Generator Co., supra; Hudson v. Silk Co.*, 185 N.C. 342, 117 S.E. 165; *Fields v. Ogburn*, 178 N.C. 407, 100 S.E. 583. To avoid foreclosure under this doctrine in an action for tortious injury, he must show that there is a latent defect known to the lessor, or which he should have known, involving a menace of danger, and a defect of which the lessee was unaware or could not, by the exercise of ordinary diligence, discover, the concealment of which would be an act of bad faith on the part of the lessor. 'If the landlord is without knowledge at the time of the letting of any dangerous defect in the premises, he is not responsible for any injuries which result from such defect.' *Covington v. Masonic Temple Co.*, 176 Ky. 729, 197 S.E. 420. And he is not liable if he did not believe or suspect that there was any physical condition involving danger. *Charlton v. Brunelle*, 82 N.H. 100, 130 A. 216, 43 A.L.R. 1281."

Ordinarily, the landlord is under no duty to make repairs. *Moss v. Hicks*, 240 N.C. 788, 83 S.E. 2d 890. The owner is not liable for personal injury caused by failure to repair. *Pleasants v. Barnes*, 221 N.C. 173, 19 S.E. 2d 627; *Simons v. Lebrun*, 219 N.C. 42, 12 S.E. 2d 644; *Tucker v. Yarn Mill Co.*, 194 N.C. 756, 140 S.E. 744. Even in case of a contract to repair, liability for personal injury resulting from a breach of the agreement is ordinarily not within the contemplation of the parties. *Mercer v. Williams*, 210 N.C. 456, 187 S.E. 556; *Jordan v. Miller*, 179 N.C. 73, 101 S.E. 550. Only in case of repairs negligently made is there liability. *Fields v. Ogburn*, 178 N.C. 407, 100 S.E. 583.

The plaintiff seeks to exclude himself from the application of the foregoing rules by alleging the defendants knew of latent and dangerous defects in the construction and maintenance of the porch floor and wrongfully concealed them from the plaintiff. There is no evidence in the record that Mrs. Thomas had any actual or constructive knowledge that the apartment was inherently dangerous, either by reason of construction or maintenance. In fact, there is no evidence she had ever seen the apartment. The only evidence in the record relating to her knowledge of the apartment was the testimony of the plaintiff that Mr. Drake told him he had complained to Mrs. Thomas about the cracks in the porch floor and that she replied she did not intend to spend any more money on the property. That was almost two years before the plaintiff's injury. The plaintiff's wife complained to Mr. Drake that the cracks in the floor were unsightly. There was no complaint

that the condition was dangerous. In fact, the plaintiff's own testimony shows lack of apparent danger: "From the time I moved into the apartment until immediately before my fall, the porch was firm."

There is no evidence the corporate defendant had knowledge the porch was insecure. That two cracks had developed, yes. The larger one had been there for more than two years and the shorter one for the greater part of that time. Actually, there is no evidence that the break was along the line of either of these cracks. The inference is at least as strong the break occurred at the place where the depression in the floor had recently developed. The space under the floor was enclosed by masonry walls built 23 years before Mrs. Thomas became the owner and before the Charlotte Rental Company became agent. The cause of the breakthrough was the deterioration of the sleepers under the floor after 31 years use.

Finally, the plaintiff argues the defendants should be held liable because Mr. Drake told the plaintiff to go ahead and use the porch pending repairs. The floor was then firm. Mr. Drake seldom saw it. The plaintiff knew that. The plaintiff knew that he was in a much better position to know about the condition than Mr. Drake was. What Mr. Drake said was nothing more than the expression of his opinion. It is difficult to see how the statement could have been understood otherwise. After all, there is no evidence that any person had known of the vacant space since the day the builder sealed it up, and that was in 1923. The plaintiff's evidence shows the defendants knew of the two cracks in the floor. It fails to show anything else.

The judgment of the Superior Court of Mecklenburg County is

Affirmed.

JOHNSON, J., not sitting.