JOHNNIE LEE TARRANT v. P. C. HULL.

(Filed 10 April 1963.)

**Landlord and Tenant § 7—**

 Evidence held not to show failure of lessor to equip elevator with proper safety devices or that there was any defect in the elevator known to lessor and not to plaintiff, an employee of lessee, and therefore nonsuit was proper in plaintiff's action against the lessor to recover for injuries sustained by plaintiff when the elevator fell, the doctrine of *res ipsa loquitur* not being applicable.

APPEAL by plaintiff from *McConnell, J.*, October 1, 1962 Regular Civil B Term of MECKLENBURG.

Plaintiff, an employee of Caskie Paper Company, was injured when a freight elevator in a warehouse owned by defendant and leased to Caskie fell from the third to the ground floor.

Defendant's lease to Caskie provided: ". . .replacement and repair to the building, including water pipes, plumbing, electricity, railroad platform and elevator, except those caused by the Lessees misuse or negligence, shll be made by the Lessor at his expense."

At the conclusion of plaintiff's evidence the court allowed defendant's motion to nonsuit.

*Nick J. Miller and Charles M. Welling for plaintiff appellant.*
*Helms, Mulliss, McMillan & Johnston by Fred B. Helms and E. Osborne Ayscue, Jr., for defendant appellee.*

PER CURIAM. Viewed in the light most favorable to plaintiff, the evidence was sufficient for a jury to find these facts: Plaintiff had been working for Caskie about two years when he was injured. He, a co-worker, and his superior went to the elevator either to take merchandise to the upper floor, as the supervisor testified, or to take it from the upper floor to the ground floor, as plaintiff testified. In any event they entered the elevator at the ground floor and rode to the third floor. At that point they sought to put a lift fork on the elevator. While trying to load the fork, the elevator fell, "landing" on the ground floor. Plaintiff was injured in the fall.

Movement of the elevator was by a wire cable fastened to the top of the elevator, passing through pulleys at the top of the building, then to a drum below the first floor. The elevator was raised or lowered depending on the direction in which the drum was rotated.

The elevator was in use when defendant purchased the warehouse in 1928. Caskie has occupied the property under lease for seventeen years. Defendant is not a mechanic. He has, since 1947, employed Ace Elevator Company, a concern of good repute engaged in the business of maintaining and servicing elevators, to make "monthly examination of the elevator. . .and. . .necessary minor adjustments." Whenever Ace suggested repairs were needed, defendant approved and paid for the work. In 1955 the North Carolina Department of Labor suggested certain additional safety devices. This work was done.

Employees of Ace who serviced the elevator went to the warehouse when called because of the fall. They found the elevator resting on the ground. Much of the cable had run off the drum, warping the

axle. This condition could result from the elevator's "landing," that is, going below the level of the first floor. If the elevator should not stop at the ground floor, as it was supposed to do, the cable would continue to unwind. When a "landing" occurs and the elevator is subsequently raised, the cable does not follow the proper grooves, but piles one layer on another, ultimately running off the drum. The resultant slack permits the elevator to fall.

One of plaintiff's witnesses expressed the opinion "the elevator sat down in the pit and the cables got slack and piled on top of each other and got slack and slipped off the end of the drum." Another witness expressed the opinion "the cause of the elevator's falling was either the cable piling up or the elevator got stuck. I couldn't say which one it was."

Plaintiff contends the elevator fell because of (a) defendant's failure to repair as he contracted to do, or (b) his failure to install proper safety devices, or (c) defective installation by failing to make the pit deep enough to prevent the cable from getting slack.

The doctrine of *res ipsa loquitur* is not applicable. We find no evidence of defendant's failure to comply with its contractual obligation to lessee; but if there were evidence of such breach, that would not impose liability on defendant for plaintiff's injuries. *Robinson v. Thomas*, 244 N.C. 732, 94 S.E. 2d 911; *Jordan v. Miller*, 179 N.C. 73, 101 S.E. 550.

The testimony negatives the suggestion that the elevator was not equipped with proper safety devices. At most, it merely indicates a failure of these devices for some unknown reason to stop the elevator when it started to fall. There is no evidence of a defect known to defendant and unknown to plaintiff. If it can be said that the failure to make the pit deep enough was a defect notwithstanding more than thirty years' safe use, the evidence is unequivocal that defendant did not know that it was not in fact deep enough; and experts employed to maintain the elevator in a safe operating condition and State inspectors who examined the elevator made no suggestion to defendant that the pit should be deepened. The judgment of nonsuit is

Affirmed.