* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. At the time of the alleged injury on January 14, 2005, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. Crawford Company is the carrier on the risk.
4. Plaintiff's average weekly wage at the time of the alleged injury was $650.16 per week.
5. The following documents stipulated to in the Pre-Trial Agreement dated October 3, 2005, are part of the evidentiary record:
 (a.) The Pre-Trial Agreement entered into the record as Stipulated Exhibit 1;
 (b.) Medical records of plaintiff tabbed and indexed and entered into the record as Stipulated Exhibit 2;
 (c.) Medical bills of plaintiff and a summary thereof entered into the record as Stipulated Exhibit 3;
 (d.) Written statements made by plaintiff and entered into the record as Stipulated Exhibit 4;
 (e.) A recorded statement made by plaintiff and entered into the record as Stipulated Exhibit 5.
6. The issue before the Full Commission is whether plaintiff sustained a compensable injury by accident or occupational disease and if so, whether plaintiff gave defendants proper notice of the injury or occupational disease.
 * * * * * * * * * * * *Page 3 
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 47 year old and was born on August 3, 1959. He has a G.E.D. and electrical training as a member of the U.S. Navy. Plaintiff has held a master's-level certification as an electrician in Arkansas. As the requirements are different, plaintiff is not a licensed electrician in North Carolina; however, he has worked as an electrician for over 20 years.
2. Plaintiff was an employee of Via Electric Company for approximately four and a half to five months prior to the alleged injury. In January 2005, plaintiff was working as an electrician. His job duties included running conduit, setting panels, hanging light fixtures, pulling wire, and other electrical duties. Pulling wire was a normal activity contemplated in the work of an electrician.
3. On or about January 14, 2005, plaintiff and another employee were pulling wire out of a junction box when plaintiff developed soreness in his left arm and shoulder. Plaintiff testified that he was standing on the second rung of a ladder at the time, although this was not reflected in his recorded statement or in the medical records. Plaintiff continued to work the remainder of the day after pulling wire and did not report any incident to his co-workers or supervisor. Plaintiff explained that it was not unusual for him to be sore after pulling wire.
4. Plaintiff continued to work for approximately another week. Plaintiff never reported any type of accident to his supervisor, Ben Chaney, and mentioned only that he was "sore" from pulling wires. On Friday, January 21, 2005, plaintiff had a heated exchange of words with Mr. Chaney and walked off the job. Plaintiff was upset because his arm was hurting and due to the pain, he did not want to do the work assigned that day. Plaintiff returned to the *Page 4 
job on Monday, January 24, 2005, turned in his key and picked up his tools. Although plaintiff complained that his arm was sore, he made no mention of any injury by accident to Mr. Chaney on either January 21 or 24, 2005.
5. Plaintiff first sought medical treatment for his left elbow and arm on January 24, 2005, when he saw Dr. John M. Woodyear, a board certified family practitioner at Family Care Associates. Dr. Woodyear's notes reflect that plaintiff worked as an electrician, complained of elbow pain, that pulling wires resulted in "aggravation" of his symptoms, and that "Last Fri the job required a lot of heavy pulling that really aggravated the condition." Dr. Woodyear assessed plaintiff as suffering from medial epicondylitis and excused him from work for the next seven to ten days.
6. On January 25, 2005, plaintiff wrote defendant-employer a letter advising that he was excused from work for the next seven to ten days. Plaintiff indicated he had tendonitis and that he had been frustrated and irritated by his pain, which was the reason for his behavior the prior week. He did not mention any specific injury by accident on the job.
7. Plaintiff next treated with Dr. Woodyear on February 7, 2005. On this occasion, Dr. Woodyear's medical notes show no complaints by plaintiff of any shoulder or neck pain. His records contain no information indicating that plaintiff suffered an injury at work after slipping on a ladder. Dr. Woodyear reviewed an x-ray of plaintiff's left shoulder and characterized it as negative. Plaintiff did not return to see Dr. Woodyear after this visit and did not seek treatment again for over three and a half months. At his deposition, Dr. Woodyear testified that the incident on January 14, 2005 could explain plaintiff's symptoms and that it was "within the realm of possibility." *Page 5 
8. On February 10, 2005, plaintiff again wrote defendant-employer, stating that he did not sustain the injury to his left arm and shoulder "due to any kind of accident." Plaintiff's testimony shows that he was not aware of the legal definition of a workers' compensation "accident." Plaintiff did request workers' compensation forms from defendant-employer in the February 10, 2005 letter.
9. On May 20, 2005, plaintiff presented to Dr. Harrison Latimer, an orthopedic specialist, complaining of left elbow pain but not shoulder or neck pain. Plaintiff's history indicated that plaintiff developed an onset of soreness after pulling wire on January 14, 2005, but there is no note regarding plaintiff slipping on a ladder at work on January 14, 2005. Plaintiff had full range of motion for the cervical spine with no pain upon examination. Dr. Latimer diagnosed possible tendonitis of unclear etiology and he returned plaintiff to work on May 20, 2005, with restrictions.
10. On May 23, 2005, defendant-employer wrote to plaintiff indicating that light duty work was available for him and directing him to call the office or his supervisor to arrange for a return to work. Plaintiff's supervisor, Ben Chaney, and office manager, Heather Via, testified that plaintiff did not make arrangements to return to light duty work although it was available.
11. On May 31, 2005, plaintiff returned to Dr. Latimer, who ordered an MRI of the left elbow. On June 14, 2005, Dr. Latimer informed plaintiff that the MRI revealed a change in the "tendon insertion of the lateral epicondyle," which is a disruption consistent with tennis elbow and was not the medial epicondyle area where plaintiff experienced pain. Dr. Latimer testified that such an injury to the lateral epicondyle could be sustained either acutely or over a period of time. Dr. Latimer testified that it was impossible to make an opinion on causation. He did not recommend surgical intervention and released plaintiff from his care. *Page 6 
12. The Full Commission finds that the greater weight of the evidence indicates that while plaintiff may have injured his left arm while pulling wire on January 14, 2005, the injury was not the consequence of an "accident." It was part of plaintiff's usual job duties to pull wire and there was nothing specific that interrupted his routine of pulling wires on that day. There is insufficient evidence to show that plaintiff sustained an injury to his neck on or about January 14, 2005. Further, the Commission finds that there is insufficient evidence to establish that plaintiff developed an occupational disease that is characteristic of and peculiar to his employment as an electrician.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. The person claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of the employment. Henry v.Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). An injury that occurs under normal work conditions, no matter how serious the injury, is not considered an injury caused by "accident" and is not compensable under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6);Poe v. Acme Builders, 69 N.C. App. 147, 316 S.E.2d 338 (1984);Searsey v. Perry M. Alexander Construction Co., 35 N.C. App. 78, 79-80,239 S.E.2d 847, 849, disc. review denied, 244 N.C. 736, 244 S.E.2d 154
(1978). *Page 7 
3. In this case, plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment on January 14, 2005. N.C. Gen. Stat. § 97-2(6). Further, plaintiff failed to show that a causal relationship existed between the alleged incident on January 14, 2005 and the disability for which compensation is sought.Click v. Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980). Therefore, plaintiff is not entitled to benefits under the Workers' Compensation Act for his alleged injury by accident. N.C. Gen. Stat. § 97-29.
4. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him or her to a greater risk of contracting the disease than the public generally.Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development. Hardin v. Motor Panels, Inc., 136 N.C. App. 351,524 S.E.2d 368 (2000) (citing Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983). Even where the condition was aggravated but not originally caused by the claimant's employment, a claimant must show that the employment placed him at a greater risk for contracting or developing the condition. Futrell v. Resinall Corp., 357 N.C. 158,579 S.E.2d 269 (2003). Accordingly, the plaintiff has failed to establish that he suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Under the law, plaintiff's claim must be and is hereby DENIED.
 2. Each side shall pay their own costs. *Page 8 
This 22nd day of March, 2007.
S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________________ DANNY LEE MCDONALD COMMISSIONER
 S/_______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1