***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Rowell.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On July 25, 2008 plaintiff was working for defendant-employer at its plant in Hamlet, North Carolina, as a maintenance worker.
3. On July 25, 2008, the carrier on the risk was Lumbermen's Underwriting Alliance.
4. Plaintiff's average weekly wage was to be determined by a Form 22 Wage Chart submitted by defendants.
5. The parties stipulated into evidence as Stipulated Exhibit # 1, as referenced by the table of contents to include the following: Pre-Trial Agreement, as modified and initialed by the parties, Medical Records, Industrial Commission Forms, Written Statements of Two Co-Workers, Employment Records, and Photographs of the Bottomer No. 1 Machine.
 *********** ISSUES
1. Did plaintiff sustain a compensable injury by accident arising out of and in the course of his employment with defendant-employer on July 25, 2008?
2. If so, to what indemnity compensation and/or medical treatment, including surgery to the left rotator cuff tendon, is plaintiff entitled as a result of plaintiff's injury by accident on July 25, 2008?
 ***********
Based upon all of the competent credible evidence record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 56 years old. He first started working at defendant-employer in May of 1978. For the past 12 years, plaintiff was employed in the maintenance department, where his duties involved working on and repairing various machines located in the Hamlet plant. Plaintiff is right-hand dominant.
2. Defendant-employer, Hood Packaging Corporation, operates a manufacturing plant in Hamlet, North Carolina. This plant produces paper bags of various sizes which are used for dog food, cat food, cat litter, and concrete mix.
3. On the evening of July 25, 2008, one of plaintiff's co-workers asked him to perform some maintenance work on a machine known as the Bottomer No. 1 machine, which attaches bottoms to paper bags. One of the drains inside the Bottomer No. 1 machine was clogged, requiring plaintiff to crawl into the machine to clean out the drain.
4. Plaintiff testified at the Deputy Commissioner's hearing that there is no easy way to get into the Bottomer. He had to find a place to put his feet and brace his hands to stabilize himself as he crawled into the machine. On this night, plaintiff had his shoulders cocked up three to four inches higher than usual to stabilize himself and as his foot hit the floor, his left shoulder popped.
5. Plaintiff thought that he had pulled a muscle and despite the pain in his left shoulder, plaintiff continued working and was able to clean out the drain in question. At the end of his shift, plaintiff reported this left shoulder incident to his supervisor, Ron Davis. During that conversation, plaintiff told Mr. Davis that he had crawled into that same machine at least "a hundred times" before. Plaintiff repeated that same comment in October 2008 when he completed some written Incident Reports for defendant-employer. Plaintiff also reported this incident to two other co-workers, Lee Williams and Dennis Turner. *Page 4 
6. Following the incident on July 25, 2008, plaintiff received treatment by Dr. Ward S. Oakley, Jr., of Pinehurst Surgical Clinic. Plaintiff was diagnosed with a large rotator cuff tear in his left shoulder. Dr. Oakley recommended surgery for the rotator cuff tear. However, as of the hearing before the Deputy Commissioner, plaintiff had not yet undergone any surgery on his left shoulder and continued to work full time for defendant-employer.
7. During the 12 years prior to the alleged work injury of July 25, 2008, plaintiff had worked on that same Bottomer No. 1 machine "many times." During that 12-year period, plaintiff crawled into that particular machine one to ten times per month to clean out drains or to complete repairs and perform routine maintenance.
8. The particular section of the machine plaintiff entered on the evening of July 25, 2008, included some horizontal metal bars on which plaintiff would prop or brace his arms before entering the machine. This section was one of plaintiff's more common entry points for crawling into the machine. On the evening of July 25, 2008, plaintiff employed the same propping or bracing posture that he normally used to enter the machine.
9. According to plaintiff, the only thing different about that particular entry point on the evening of July 25, 2008, was that the canvas mat in that area was "a little bit wet." However, on other occasions prior to July 25, 2008, plaintiff had crawled into the machine when the mat was wet. Otherwise, plaintiff confirmed that the entry point to the machine on July 25, 2008 was "the same that day as it always had been."
10. Plaintiff did not slip, slide or fall on the wet mat on the evening of July 25, 2008. Therefore, the wet mat did not contribute in any way to the painful popping sensation which plaintiff experienced in his left shoulder on the evening of July 25, 2008. *Page 5 
11. Ronald Davis has been working for defendant-employer for 11 years. For the last two years, Mr. Davis' position with defendant-employer was setup supervisor and he was plaintiff's immediate supervisor in July of 2008. Further, Mr. Davis was familiar with the Bottomer No. 1 machine as it existed in July of 2008. Mr. Davis agreed that crawling into the machine to clean the drain was a regular part of plaintiff's job duties.
12. The Full Commission finds by the greater weight of the evidence that although plaintiff injured his left shoulder while crawling into the Bottomer machine on July 25, 2008, the injury was not the consequence of an "accident." The task of crawling into the Bottomer No. 1 machine at the particular entry point in question to unclog the drain was a usual and routine part of plaintiff's regular work duties as a maintenance man. The bracing or propping posture which plaintiff employed to enter the machine on July 25, 2008, was the same posture that plaintiff typically used to enter the machine at that entry point. Other than the injury itself when plaintiff experienced the painful popping sensation in his left shoulder, the events of July 25, 2008 did not involve any departure from or interruption of plaintiff's routine work duties as a maintenance man for defendant-employer. Therefore, there is insufficient evidence to show that plaintiff sustained a compensable injury by accident to his left shoulder on July 25, 2008.
13. Further, the Commission finds that there is insufficient evidence to establish that plaintiff developed an occupational disease that is characteristic of and peculiar to his employment in the maintenance department.
 ***********
Based upon the forgoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 6 
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. An employee claiming the benefit of compensation has the burden of showing that the injury complained of resulted from an injury by accident arising out of and in the course of the employment.Henry v. Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950).
3. An injury that occurs under normal work conditions, no matter how serious the injury, is not considered an injury caused by "accident" and is not compensable under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6); Poe v. AcmeBuilders, 69 N.C. App. 147, 316 S.E.2d 338 (1984); Searsey v.Construction Co.,35 N.C. App. 78, 79-80, 239 S.E.2d 847, 849, disc. reviewdenied, 244 N.C. 736, 244 S.E.2d 154 (1978). The mere fact of an injury does not, of itself, establish an "accident" within the meaning of N.C. Gen. Stat. § 97-2(6). Key v. Woodcraft, Inc.,33 N.C. App. 310, 235 S.E.2d 254 (1977).
4. An "accident" has been defined as "the interruption of the routine work and the introduction thereby of unusual conditions."Sanderson v. Northeast Construction Co.,77 N.C. App. 117, 121, 334, S.E.2d 392, 394 (1985). Furthermore, "once an activity, even a strenuous or otherwise unusual activity, becomes a part of the employee's normal work routine, an injury caused by such activity is not the result of an interruption of the work routine or otherwise an `injury by accident' under the Workers' Compensation Act." Bowles v. CTS of Ashville,77 N.C. App. 547, 550, 335 S.E.2d 502, 504 (1985). See also,Landry v. U.S. Airways, Inc.,356 N.C. 419, 571 S.E.2d 586 (2002) (reversed per curiam for the reasons in the dissent,150 N.C. App. 121, 125, 563 S.E.2d 23, 26; holding that employee had not sustained an injury by accident because he was engaged in his normal duties and was using his normal motions when he injured *Page 7 
his shoulder); Gunter v. Dayco Corp.,317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986) (holding that an injury does not arise by accident if an employee is injured while carrying on his usual tasks in the usual way).
5. In the case at bar, plaintiff's claim for an injury by accident must fail, because plaintiff has not shown any interruption of or departure from his regular work routine. On the evening of July 25, 2008, plaintiff was merely carrying out his usual tasks in the usual way, using his normal motions and procedures. The painful popping of his left shoulder that night, although unfortunate, did not result from any "accident" within the meaning of the Act. N.C. Gen. Stat. § 97-2(6), Poe v. Acme Builders,supra. Therefore, plaintiff is not entitled to benefits under the Workers' Compensation Act for his alleged injury by accident. N.C. Gen. Stat. § 97-29.
6. In order to establish an occupational disease under N.C. Gen. Stat. § 97-53(13), a claimant must show that the employment exposed him to a greater risk of contracting the disease than the public generally. Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983). In addition, the claimant must show that the employment significantly contributed to, or was a significant causal factor in, the disease's development.Hardin v. Motor Panels, Inc.,136 N.C. App. 351, 524 S.E.2d 368 (2000). In this case, plaintiff has failed to establish that he contracted an occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for benefits under the Act must be, and is hereby, DENIED. *Page 8 
2. Each party shall bear the costs of this action.
This 13th day of May, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1