JOHN L. SHORTER v. MOORESVILLE COTTON MILLS.

(Filed 27 November, 1929.)

1. **Master and Servant C e—There is presumption of law that master has properly performed duty in employing his workers.**

In an action by an employee to recover damages from his employer for a personal injury caused solely by the negligence of another employee, the presumption of law is that the employer has properly performed his duty in employing his workers and is not responsible for injuries to an employee attributable solely to the negligence of a fellow-servant.

**2. Same—Where master has notice of incompetence of servant he is liable for injury caused by such servant to another.**

An employer impliedly contracts that he will engage the services of those who are reasonably fit and competent for the performance of their respective duties in the common service, and where the master has had express notice of the unfitness of an employee to safely perform the duties intrusted to him, the master is culpably negligent in continuing to employ such servant, and is responsible in damages to another employee who has been injured as a result of the unfitness of the servant.

**3. Same—In this case held: evidence of notice to the master of the incompetency of servant was sufficient to be submitted to the jury.**

Where the evidence in an action against the master for injuries inflicted by a fellow-servant shows that on the morning of the day the plaintiff, an employee of the defendant, was injured he complained to his overseer of the carelessness and incompetency of a fellow-servant, he had done all that he was required to do under the circumstances, and viewing the evidence in the light most favorable to the plaintiff, it must be assumed that his complaints were made in good faith, and it is sufficient evidence of express notice to the master to be submitted to the jury.

**4. Master and Servant C f—Assumption of risk is ordinarily question for jury.**

In an action against the master for a personal injury negligently inflicted on a servant through the negligence of a fellow-servant, the question as to whether the servant inflicting the injury was so obviously reckless and incompetent that no person of ordinary prudence would continue to work with him, is ordinarily one of fact for jury upon the issue of assumption of risk.

CIVIL ACTION, before *Sink, Special Judge,* 10 June, 1929, Special Term of MECKLENBURG.

The defendant is engaged in the manufacture of cotton, and the plaintiff brought this suit alleging that he was injured by the negligence of defendant on 16 April, 1928. The particular negligence alleged was that the defendant furnished to the plaintiff an incompetent fellow-servant whose carelessness and incompetency was known to the defendant or should have been known by the exercise of ordinary care.

The evidence tended to show that on 16 April, 1928, the plaintiff was adjusting or grinding cards in the mill of defendant. A card, according to the evidence, is a machine with a cylinder thirty-six inches in diameter. Over the cylinder one hundred and ten flats revolve, and when a flat is taken out that leaves the cylinder exposed, "and in order to make this gauge one-twelve-thousandths of an inch, you gauge it and see if you can feel the flats in that small amount of gauge, and that is what I was doing when I got hurt. I was standing there with my hand up to the flats and setting the gauge between the flats and the cylinder. . . . I was supposed to adjust it if it was not setting properly. While I was

doing this, I don't know what happened; my hand was caught and I could not imagine what was holding to it. I saw the belt was off, and I did not know how in the world that could start with no belt on. The machine started while I was doing that. . . . When the machine started up my hand was in between the flats exposed to the cylinder. . . . The machine is driven, when in operation, by a belt, from the main shaft. The belt was off and tied up. . . . I don't know how it started. I know it caught my hand. I am positive that it was not started by the belt. It grabbed my hand and I could not pull it out, and the cylinder turning was just biting the meat off and tore all the meat off the top of my hand."

Another witness testified in behalf of plaintiff, as follows: "He got hurt on the card machine, after I gave him the gauge. I just turned around and walked off and got out in the front alley and heard him holler, and I turned around and he was pulling, trying to get out. When I got back to the card the cylinder was still pulling. He told me to stop it, and I took hold of it to stop it, and it was hard to stop, and I noticed that boy over there ahold of it pulling it—he was pulling it the wrong way. When I saw Pruitt he was pulling at the cylinder, turning it. He was pulling at the pulley on the cylinder. . . . Pruitt said he was backing the cylinder off the man's hand, but he was pulling it the wrong way."

Plaintiff further offered evidence tending to show that he was injured in the afternoon, but that on the morning of the day he was injured at about 7:30 or 8 o'clock he complained to Mr. Wilson, his overseer, that Pruitt was dangerous and incompetent. Plaintiff testified that he told Mr. Wilson: "You ought to put somebody else over here; that man is dangerous; he is going to hurt somebody or hurt himself before the day is gone." Plaintiff further testified that previously he had seen Pruitt playing with the pulleys and shafting in the mill, meddling around the machinery. Plaintiff further testified that he had complained to his overseer, Mr. Wilson, twice on the day he was injured about the carelessness and incompetency of Pruitt, his fellow-workman.

The defendant offered strong evidence contradicting the evidence of plaintiff. Pruitt testified for the defendant that he did not injure the plaintiff by turning the pulley, but that plaintiff started up the machine and was the author of his own injury. The agents of defendant denied that the plaintiff had made complaint as to the incompetency of Pruitt, or that they had any knowledge of his carelessness.

Issues of negligence, contributory negligence, assumption of risk and damages were submitted to the jury and answered in favor of plaintiff. The verdict awarded damages in the sum of $2,250.

From judgment upon the verdict the defendant appealed.

*Jake F. Newell and Stewart, MacRae & Bobbitt for plaintiff.*
*Z. V. Turlington and Pharr & Currie for defendant.*

BROGDEN, J. The right of plaintiff to recover damages in this action is based upon the theory that Pruitt, a fellow-servant, was incompetent, reckless and dangerous, and that Pruitt carelessly turned the pulley when the hand of plaintiff was exposed in a dangerous machine, and thereby inflicted serious and permanent injury.

The law presumes that an employer has properly performed his duty in employing his workers, and, therefore, he is not responsible for injuries to an employee attributable solely to the negligence of a fellow-servant. This principle was declared in *Walters v. Lumber Co.,* 163 N. C., 536, 80 S. E., 49, as follows: "The presumption is that the employer has properly performed his duty in the respect suggested, and before responsibility can be fixed on him it must be established by the greater weight of the testimony that the employee has been injured by reason of the carelessness or negligence due to the incompetency of a fellow-servant; that the master has been negligent in employing or retaining an incompetent employee after knowledge of the fact, either actual or constructive." The principle thus announced is fully supported by the decisions of the appellate courts and by all the leading textwriters.

In the case at bar, there is no evidence that the defendant was negligent in employing Pruitt. So that the liability of the defendant must rest upon either actual or constructive notice of the incompetency and carelessness of the servant complained of. The evidence shows that on the morning of the day he was injured plaintiff complained to his overseer of the carelessness and incompetency of Pruitt. Therefore, the plaintiff had done all that he could be required to do under the circumstances. He had no power to discharge Pruitt, and viewing his evidence in its most favorable light, it must be assumed that his complaints were made in good faith. These complaints were sufficient evidence of express notice to be submitted to the jury.

Nor in view of the facts disclosed by the record can the plaintiff be denied recovery as a matter of law by the application of the principle of assumption of risk. Upon this aspect of the case the law was settled in *Walters v. Lumber Co.,* 165 N. C., 388. The Court quoted with approval the following: "The hiring or retention of a servant whose unfitness for his duties, whether it arises from his want of skill, his physical and mental qualities, or his bad habits, if known, actually or constructively, to the master, is culpable negligence, for which the master must respond in damages to any other servants who may suffer injury through that unfitness. The essential ground upon which the liability thus predicated is based is that 'the master impliedly contracts that he will use due

care in engaging the services of those who are reasonably fit and competent for the performance of their respective duties in the common service.' " The Court adding: "It therefore makes no difference that Milton Carden, whose negligence caused the injury, was a fellow-servant of the plaintiff, as the jury must have found that he was incompetent and that the master knew it before the plaintiff was hurt in the operation of the machine."

The question as to whether the recklessness of Pruitt was so obvious and injury therefrom so imminent that no person of ordinary prudence would continue to work with him, was a question of fact for the jury. *Maulden v. Chair Co.,* 196 N. C., 122, 144 S. E., 557.

Upon a consideration of the entire case we find no reversible error.

No error.