ALONZO PLEASANTS v. J. OTIS BARNES AND C. WELDON BARNES.

(Filed 8 April, 1942.)

**1. Landlord and Tenant § 1: Master and Servant § 1—**

Plaintiff was a sharecropper on defendants' farm.  The agreement be-
tween them made no provision in regard to plaintiff helping in pulling
stumps or in doing extra work on the farm, but in response to defendants'
request, plaintiff aided in pulling stumps from a field on the farm.  *Held:*
Plaintiff's work in helping to pull the stumps was incidental to the con-
tract of renting, and in regard thereto the relationship between the parties
was that of landlord and tenant and not that of master and servant.

**2. Master and Servant § 18—**

Ordinarily, a master is not liable for an injury to a servant attributable
solely to the negligence of a fellow servant provided the master has exer-
cised reasonable care in selecting servants who are competent and fit for
the work in which they are engaged.

**3. Same—**

The presumption is that the master has used due care in selecting his
servants, and the burden is upon an employee injured by the negligence of
a fellow servant to show by the greater weight of the evidence that the
fellow servant was incompetent and that the master employed or retained
the fellow servant after knowledge, actual or constructive, of his incom-
petency.

**4. Same—Evidence held to show that plaintiff's injury was result of negli-
gence of fellow servant.**

Plaintiff was a sharecropper on defendants' farm and was injured while
engaged in pulling stumps in a field.  Plaintiff's evidence tended to show
that an employee of the defendants was driving a tractor and that he and
plaintiff were pulling the stumps by wrapping a chain around a stump
and pulling it up with the tractor, that they had successfully pulled a
number of stumps by having plaintiff hold the end of the chain until the
tractor had drawn it tight so that its links would lock, but that on the
occasion causing plaintiff's injury the driver of the tractor, instead of
tightening the chain gradually as he had been doing, did so suddenly so

that the chain did not lock but jerked plaintiff to the ground and hit him, causing the injury in suit. Plaintiff offered no evidence that the driver of the tractor was incompetent or that defendants hired or retained him with actual or constructive knowledge of any incompetency. *Held:* Even conceding that the relationship of master and servant existed between defendants and plaintiff, the evidence disclosed that the injury was caused by the negligence of a fellow servant, and failed to show any negligence on the part of defendants in hiring or retaining him.

**5. Master and Servant § 15—**

In order to hold the master liable for injuries to a servant on the ground that the master failed to provide a sufficient number of employees to do the work, the injured employee must show that the insufficiency of help was a proximate cause of the injury.

**6. Master and Servant § 14a—**

Plaintiff was engaged in helping pull stumps with a tractor and chain. The chain had no hook, but the stumps were pulled by wrapping the chain around the stump several times and locking the links by tightening the chain with the tractor while plaintiff held the other end of the chain. *Held:* In order to predicate liability on the part of the master in failing to provide a chain with a hook, plaintiff must show that chains with such hooks were in general and approved use in performing such work.

**7. Master and Servant § 17—**

Plaintiff was engaged in helping to pull stumps with a tractor and chain. Plaintiff's evidence disclosed that he objected to doing the work without more help and without a hook on the chain, but that he continued to work without any promise by defendants to repair the chain or furnish more help. *Held:* The relationship between the parties was not such as to obligate plaintiff to continue to work in the face of known danger, and therefore plaintiff assumed the risk incident thereto.

APPEAL by plaintiff from *Hamilton, Special Judge,* at November Term, 1941, of JOHNSTON.

Civil action to recover for injury allegedly resulting from actionable negligence.

Upon the trial below, plaintiff offered evidence tending to show these facts:

In November, 1939, plaintiff rented from defendants a farm in Johnston County, owned by them, for cultivation by him in year 1940, on "half shares, the old fashioned way," that is, plaintiff to "furnish labor and one half the guano" and receive half of the crops, and defendants to furnish "teams and tools" and receive the other half of the crops.

There was a field on this farm that had some stumps in it. In 1939 plaintiff had plowed and tended this field in tobacco, with the stumps there, and planned to plant it in corn in 1940. At the time the rental contract for 1940 was made nothing was said about pulling the stumps, nor was anything said about plaintiff doing extra work on the farm.

Pulling stumps was first mentioned on 8 March, 1940, when defendant, Weldon Barnes, came to plaintiff in the field where he was plowing, and told him that he wanted to pull some of the stumps and wanted plaintiff to help him next day. Plaintiff testified: "He just asked me to help . . . and I told him I would help him." Then, in response to this question, "Did you have any agreement with respect to what you were to get for it?" plaintiff testified, "No, sir, I didn't have any agreement." And on cross-examination stated: "Anybody ought to know that getting these stumps out would make it a much better field to plant, cultivate and tend."

Further, while on morning of 9 March, before leaving the place where stumps were being pulled, Barnes asked Bandy if he wanted to work all day, he said nothing to plaintiff.

On this morning defendant, Weldon Barnes, returned to the farm. Lorenzo Bandy, a colored man who worked for Barnes and drove tractor practically all the time, brought a Case tractor and also a chain which was about 30 feet in length and about 300 pounds in weight. Barnes said he had figured out a way to pull the stumps with the chain—the idea being, to wrap the chain around a stump two or three times and "run it under the chain that went out to the tractor" and to hold the end of the chain until it was tightened by the tractor. They went to work about 9 o'clock.

Regarding the work, plaintiff testified substantially as follows: Plaintiff told Barnes that, as the chain did not have a hook on it, he did not like to work with it. Barnes said nothing and "seemed to think it would be all right and he kept on pulling stumps." In pulling a stump, all of them, plaintiff, Barnes and Bandy, would wrap the chain around the stump and "run it under the chain that went out to the tractor and back." Barnes told plaintiff to hold one end of it "until it locked . . . tightened." Then Barnes would motion to Bandy to drive the tractor, and he would drive off. In this manner six or seven stumps were pulled while Barnes was there and no accident happened. Then he went away. Before he left plaintiff told him that the chain was too heavy for two to handle, but "he left and didn't say anything, just spoke to Lorenzo Bandy about quitting time." After Barnes had gone, plaintiff and Bandy hooked to a stump, that is, put the chain around the stump and fastened it just like they did when Barnes was there so that when the tractor pulled on the chain it would catch in the links and tighten. Plaintiff said: "I saw this being done all the morning until I got hurt." Then after the chain was wrapped around the stump two or three times and fastened, Bandy got in the tractor and started it voluntarily without any signal or direction from plaintiff. In plaintiff's words: "He snatched the tractor up right quick instead of easy, like he did, and jerked me

down on my hands . . . he jerked it and that threw me down on my hands . . . he gave me a snatch, the tractor did, and instead of the chain tightening it jerked me down on my hands . . . he didn't go against it easy like he had been going against it. He hit it hard and it caused the chain to slip right quick and jerked me down on my hands, and before I could get up, it hit my leg. It pulled the end of the chain, gave it a quick jerk." Plaintiff further stated, "I was standing holding the end of the chain, between the tractor and the stump, about five feet from the stump . . . about five feet from the chain . . . out to one side."

Plaintiff, in reply to question as to why he went ahead and pulled stumps with that chain after he had stated to Barnes that it ought to have a "different fastener" on it, said: "Well, it was late in the year, and I was kind of under obligation, I felt like, to him; he was furnishing me everything I was getting and I felt like I was under obligation to go ahead and pull the stumps."

G. F. Pleasants, seventeen-year-old son of, and witness for plaintiff, testified that, while at home during that same day, Mr. Otis Barnes came there, and, in conversation, "said that Weldon knew it was dangerous, because he had tried it on a plant bed not so long before this, and said if he had known he was going up there, he would not have let him gone; said he had tried it out on a plant bed and had liked to have killed four or five."

In his complaint, plaintiff in the main alleges, as acts of negligence, that defendants failed to furnish to plaintiff (1) safe and proper tools with which to work, to wit, a chain with proper hook or fastener, without which it was a dangerous and unsafe tool when used in the manner described, (2) a safe and suitable place to work in that he was required to stand near said chain and hold to end of same until it had been tightened around the stump while being drawn by a heavy and powerful tractor, (3) sufficient help or assistance for doing the work in the manner in which it was attempted to be done, and (4) a careful and prudent driver of the tractor for such particular work, all of which defendant knew, particularly from previous experience with a wire cable, or should have known by the exercise of reasonable care.

From judgment as of nonsuit entered at close of evidence for plaintiff, he appeals to Supreme Court and assigns error.

*Albert Doub and Ward, Stancil & Ward for plaintiff, appellant.*
*I. W. Farmer and Abell & Shepard for defendants, appellees.*

WINBORNE, J. When applicable principles of law are applied to the evidence in this case, taken in the light most favorable to plaintiff, we are of opinion and hold that judgment as of nonsuit was properly entered in court below.

Though the relation of landlord and tenant existed between defendants and plaintiff with respect to the cultivation of the farm, plaintiff brings this action upon the theory that, in the work of pulling stumps, in a field on the rented farm, in which he was engaged at the time of his injury, he was the servant of defendants, that is, that the relation between them, with respect thereto, was that of master and servant. While in the contract of renting no stipulation was made with regard to tenant helping in pulling stumps or doing extra work on the farm, the pulling of stumps, which would make a "better field to plant, cultivate and tend," may appropriately be considered a mere incident to the contract of renting, and, may not, in any view, alter the existent relation of landlord and tenant. Compare *S. v. Hoover,* 107 N. C., 795, 12 S. E., 451, and *S. v. Etheridge,* 169 N. C., 263, 84 S. E., 264, where it is held that a tenant or cropper is not the servant of the landlord, even though one of the terms or stipulation of the renting be that in addition to rent to be paid, the servant, whenever at leisure, and called upon by landlord, should work for landlord at certain wage per day.

But, be that as it may, if the correctness of plaintiff's theory be conceded, we are of opinion that, upon the record on this appeal, the evidence shows that his injury was proximately caused by the negligence of a fellow servant, Lorenzo Bandy, in the operation of the tractor, as described by plaintiff, for which the master is not liable. It is not controverted that Bandy, the driver of the tractor, was, at the time, a servant of defendants.

The generally accepted principle, unless otherwise provided by statute, as it is in this State in case of railroads, is that the master is not responsible for injury to a servant attributable solely to the negligence of a fellow servant, provided the master has exercised reasonable care in selecting servants who are competent and fitted for the work in which they are engaged. *Walters v. Lumber Co.,* 163 N. C., 536, 80 S. E., 49; *Page v. Sprunt,* 164 N. C., 364, 79 S. E., 619; *Shorter v. Cotton Mills,* 198 N. C., 27, 150 S. E., 499. However, the presumption is that the master has properly performed his duty in selecting his servants, and before responsibility for negligence of a servant, proximately causing injury to plaintiff, another servant, can be fixed on the master, it must be established by the greater weight of the evidence, the burden being on the plaintiff, that he has been injured by reason of carelessness or negligence due to the incompetency of the fellow servant, and that the master has been negligent in employing or retaining such incompetent servant, after knowledge of the fact, either actual or constructive. *Walters v. Lumber Co., supra; Shorter v. Cotton Mills, supra.*

In the present case evidence, tending to establish these factual requirements, is absent.

On the other hand, if it be conceded that there is evidence of insufficiency of help, there is no evidence from which it may be reasonably inferred that that contributed in any manner in proximately causing the injury to plaintiff. Moreover, if it be conceded that there is evidence that the absence of hook impaired the usefulness of the chain for pulling stumps, the purpose for which it was being used, there is no evidence that chains with such hooks are in general and approved use. All that plaintiff testifies is that he told defendants that he didn't like to use it without a hook.

Furthermore, it is apparent that plaintiff with full knowledge of available help, and of the character of chain, continued to work, without any promise of more help, or of repair to chain. Ordinarily, under such circumstances, he would assume the incident risk. The obligation arising under existent relation of landlord and tenant was not sufficient to cause him to continue work in face of a known danger. It is said in *S. v. Etheridge, supra,* that "a tenant and cropper are more independent of the landlord than is a servant, and neither owes him the duty of allegiance or of rendering service, as growing out of their relation to him."

The judgment below is
Affirmed.