Leslie MATHES, a Minor, by and Through
Henry L. Mathes, His Next
Friend, Appellant,

v.

Karl TRUMP, Respondent.

No. 54868.

Supreme Court of Missouri,
Division No. 2.

Sept. 14, 1970.

Rehearing Denied Oct. 12, 1970.

Zenge & Smith, Canton, for appellant.

**298**

Jerome W. Seigfreid, Edward D. Hodge, Edwards, Seigfreid & Runge, Mexico, for respondent.

DONNELLY, Presiding Judge.

This is an action for damages for injuries sustained by Leslie Mathes when his arm and hand were caught in the auger of a grain dryer on the farm of Karl Trump. Leslie Mathes, through his next friend, sued for $100,000. The trial court, at the close of Leslie Mathes' evidence, sustained Karl Trump's motion for a directed verdict. Mathes perfected an appeal to this Court.

█ The question on this appeal is whether the trial court erred in sustaining the motion for directed verdict. In determining the question, we must consider the evidence from a viewpoint most favorable to Leslie Mathes and give him "the benefit of every reasonable favorable inference which the evidence tends to support." Berry v. Harmon, Mo.Sup., 329 S.W.2d 784, 789.

On October 28, 1967, Leslie Mathes was twenty years of age and had been around farming and farm machinery most of his life. He had been trained in auto mechanics and had worked for eleven months in his father's garage business. He had seen the grain dryer in operation and knew how it operated, but had never done any work on it. On October 28, 1967, he and Harlan Armstrong, a "fellow employee," were instructed by Karl Trump, their employer, to work on the grain dryer. The auger within the dryer had become clogged.

Harlan Armstrong was positioned at the front of the dryer at a tractor which was attached to the power take-off shaft of the dryer.

Leslie Mathes was positioned at the rear of the dryer where he was directed by Karl Trump to stick his hand in a trap door and remove foreign matter from the auger.

Karl Trump was positioned at the left front corner of the dryer where he could see Leslie Mathes at the rear of the dryer and Harlan Armstrong at the tractor. Mathes and Armstrong could not see each other.

A procedure was set up whereby Leslie Mathes would attempt to remove corn from the auger, Karl Trump would then tell Mathes to remove his hand and arm from within the dryer, and would then direct Harlan Armstrong to apply the tractor power to the shaft. This procedure was repeated several times but the auger remained clogged.

Leslie Mathes is the only witness who testified as to what then occurred. His testimony reads in part as follows:

"Q. After this had been done what, if anything, did Mr. Trump do or say about leaving the place?

A. After we tried a few times, and he found a crack in that nut, he said he would go to town and see about getting parts for the clutch, that he would be back in a little bit.

Q. What were you doing when he told you he was going to do this? A. I was pulling corn out of the auger.

Q. With him gone, was there anybody there to give you signals that could see you and the tractor driver at the same time? A. No.

Q. What, if anything, did you and Mr. Armstrong then continue to do?

A. Before he started the tractor he would always holler back and tell me to get out of the road.

Q. Did you get out of the way when he hollered? A. Yes.

Q. Do you know how many times it was you had your hand in the auger and the tractor would be started after Mr. Trump left?

A. That's hard to tell. It was a few, but * * *

Q. More than one time? A. Yes.

Q. Just tell what happened at the time your hand was caught.

A. He started the tractor and shut it down, and I sat there a little bit to make sure he was going to get off and go back to the pipe wrench; and I stuck by hand in to clean it out, and at the very same instant I shoved my hand in there he started the tractor back up.

Q. Did Mr. Armstrong call to you or notify you in any way he was going to start the tractor or put the tractor in power take-off this last time when your hand was caught? A. No.

Q. Had he started it at any other time without first warning you or having Mr. Trump warn you? A. Not that I recall.

Q. When the auger caught your hand how did it start? Was it a sudden movement or fast movement or * * * A. It was very sudden.

Q. Tell the jury what happened when the auger started without any warning?

A. Suddenly I felt a pain, and then I was loose, and I just grabbed my arm and took off to the house.

* * * * * *

Q. On this particular occasion will you tell us again how you were situated in cleaning the auger out? How had you been carrying out this operation?

A. You mean by reaching through this trapdoor with my hand and pulling the corn out?

Q. Yes. Before you were injured did you communicate with the man at the tractor to let him know you were going to do this?

A. After he would shut the tractor down, we would wait and then stick our hands in. He would communicate with us before he ever started the tractor.

Q. As a matter of fact, you would also communicate with him, isn't that true?

A. To a certain degree. We never actually spoke any words one way or the other, as far as me telling him I was out of the way.

Q. Isn't it a fact at times you would yell at him and tell him? A. I would tell him that I was in the clear.

Q. And he would start the tractor up? A. Yes.

Q. And you had done this several times before you were injured? A. Yes.

Q. But on the time you were injured you didn't yell at him?

A. No, I didn't."

Leslie Mathes asserts in his petition that Karl Trump was negligent as follows:

"A. The Defendant negligently and carelessly failed to provide a safe place for Plaintiff to work, and Defendant negligently and carelessly failed to provide reasonably safe tools and machinery to do the work directed and instructed by the Defendant.

B. The Defendant negligently and carelessly failed to furnish a sufficient number of men to perform the task of cleaning the grain auger in that at least three men were required to do the work with reasonable safety to the Plaintiff and other co-workers.

C. Defendant knew, or by the exercise of ordinary care should have known, that the machinery on which Plaintiff was working was capable of causing much harm; and Defendant knew or should have known that the Plaintiff was young and inexperienced and Defendant negligently failed to properly instruct Plaintiff of a safe means of performing the work directed, and negligently failed to warn the

Plaintiff of the dangers involved in the work, and negligently failed to instruct the Plaintiff when said Harlan Armstrong would engage the mechanism of the tractor to the grain auger."

We have found no reported case involving the exact fact situation presented. However, the courts have dealt with analogous fact situations. In Richardson v. Mesker, 171 Mo. 666, 673, 72 S.W. 506, 507 (1903), plaintiff Heckel, and Reynolds, a fellow employee, were repairing a machine with which they had been working. Plaintiff placed his hand on a cogwheel. Reynolds put the machine in motion, without giving notice to plaintiff that he intended to do so, and plaintiff's hand was crushed. This Court said: "The danger to the plaintiff from the movement of these cogwheels was manifest, and could be and was just as well appreciated by him as it could have been by the most skilled mechanic. He either thoughtlessly placed his hand between these wheels, or did so on the assumption that the machine would not be put in motion, until after Reynolds had clinched the nail at his (plaintiff's) end of the machine, of which fact, however, he had no assurance. Conceding, then, that Reynolds started the machine, yet if, under the circumstances, it can be said that Reynolds, without any notice of the dangerous position in which the plaintiff's hand was, was guilty of negligence in starting the machine without giving plaintiff any notice of his intention to do so, so, also, it must be said that the plaintiff was guilty of negligence in placing his hand in that dangerous position, without any notice of that fact to Reynolds, and his injury being the immediate and direct result of these two concurring acts of negligence, no recovery in his behalf can be had therefor against his employers, the Meskers. But eliminating his own negligence from the case, and attributing the injury solely to the negligence of Reynolds, still the same result must follow, as the relation between Reynolds and him was simply that of fellow-servants of the same master, * * * and engaged in the same work, on one and the same machine of that master. The only difference in grade between them being such as arose from their own personalities and the nature of the particular part of the work which each performed. Reynolds was an adult, and operated the machine—work for which he was competent and suitable. The plaintiff was a boy, and assisted or helped him —work for which he was competent and suitable. And, whatever difference of opinion may exist on this vexed question, there can be no doubt that under any rule that has hitherto received the sanction of this court, these two must be held to be fellow servants. * * * And, being fellow servants, their employer can not be held to answer for an injury to one of them, caused by the negligence of the other. So, in any view of the case, the circuit court committed no error in sustaining the demurrer to the evidence, and in refusing to set aside the nonsuit, and its judgment is affirmed."

In State ex rel. Kroger Grocery & Baking Co. v. Haid, 323 Mo. 9, 14, 18 S.W.2d 478, 480 (1929), plaintiff and Ray, a fellow employee, were employed in a warehouse. They were told to move a loaded hand truck to an elevator. Plaintiff was told to guide the truck. Ray's part in the work was to operate an electric truck which did the pushing. As plaintiff took hold of the guiding bar of the hand truck, or was about to take hold of it, Ray without any warning, brought the electric truck up against the loaded hand truck, causing the wheel of the hand truck to move onto plaintiff's foot. This Court said: "It is evident, therefore, from the facts that plaintiff was injured by the negligence of a fellow servant, in that the fellow-servant failed to warn plaintiff of the intended movement of the electric truck. The Court of Appeals' opinion holds that this was a non-delegable duty of the master. We do not think so. The opinion, on the facts stated, would destroy the fellow-servant rule, which is firmly established in the law of this state. The proximate cause of

plaintiff's injury was the operation of the electric truck by Ray, without warning plaintiff, the act of a fellow servant. The master cannot be expected to be present to guard an employee against each act of a fellow servant, even though it be a negligent one. * * * There is no question but that plaintiff and Ray were laborers, and, as the negligent act arose merely through the doing of the labor the two were performing in common, the proximate cause of the injury was the negligent act of the fellow servant. * * *"

The principles of law applied in the Mesker and Haid cases, supra, were followed by this Court in Cain v. Humes-Deal Co., 329 Mo. 1107, 49 S.W.2d 90 (1932), and Marshall v. Kansas City, Mo. Sup., 296 S.W.2d 1 (1956), in somewhat analogous fact situations. In Pleasants v. Barnes, 221 N.C. 173, 19 S.E.2d 627 (1942), the Supreme Court of North Carolina held the defendant not liable, as a matter of law, in a fact situation similar to that present here.

We have concluded that the trial court did not err in sustaining the motion for directed verdict at the close of plaintiff's evidence. A "case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence. Neither may any fact essential to submissibility be inferred in the absence of substantial evidentiary basis. In other words, liability cannot rest upon guesswork, conjecture or speculation beyond inferences reasonably to be drawn from the evidence. * * * The question of whether the evidence in a given case is substantial is one of law for the court. * * *" Probst v. Seyer, Mo.Sup., 353 S.W.2d 798, 802.

■ It was Karl Trump's duty "to use all reasonable means and precautions against injury to * * * [Leslie Mathes] which ordinary prudence and foresight would dictate in the light of the circumstances and existing knowledge. * * * [However, Karl Trump] is not liable for

the *consequences* of danger, only that of his own * * * *negligence.* * * *"
Daniel v. Childress, Mo.App., 381 S.W.2d 539, 542. An "employer is not an insurer of the employee's safety." Hightower v. Edwards, Mo.Sup., 445 S.W.2d 273, 275.

■ We hold, on the evidence adduced, that Karl Trump was under no duty to anticipate the dangerous method of operation established by Leslie Mathes and Harlan Armstrong. He was under no duty to anticipate such dangers as those which resulted in Leslie Mathes' injury. In this respect, the Hightower case, supra, and Thorpe v. Missouri Pac. Ry. Co., 89 Mo. 650, 2 S.W. 3, cited by Leslie Mathes, are not in point. It seems to us that only by resorting to speculation and conjecture outside of and beyond the evidence may it be found that any negligence of Karl Trump proximately caused the injury to Leslie Mathes. We believe the proximate cause of plaintiff's injury was the combined negligence of Leslie Mathes and Harlan Armstrong. This being true, Leslie Mathes failed to make a submissible case.

The judgment is affirmed.

MORGAN and FINCH, JJ., and JENSEN, Special Judge, concur.