Emil JURCICH, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION,

and

Katherine Cronen,
Defendants-Respondents.

No. 36154.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 15, 1976.

Motion for Rehearing or Transfer
Denied July 9, 1976.

Application to Transfer Denied
Sept. 13, 1976.

---

1. In 1975, § 560.135 was amended eliminating the death penalty.

Gerritzen & Gerritzen, St. Louis, for plaintiff-appellant.

Joseph M. Kortenhof, St. Louis, for defendants-respondents.

KELLY, Judge.

Emil Jurcich, plaintiff in the trial court, brings this appeal from a judgment of the Circuit Court of the City of St. Louis wherein the trial court sustained the joint motion of the defendants, General Motors Corporation and Katherine Cronen, for a directed verdict at the close of the plaintiff's evidence and entered judgment on behalf of both of the defendants. We affirm.

Appellant's Second Amended Petition on which the cause came on for trial pleaded a cause of action in fraud in five counts. The allegations of the petition essential to an understanding of the case are that on June 5, 1967, plaintiff, while in the employ of General Motors Corporation, Fisher Body Division, was working on an assembly line and while in the act of crossing the assembly line was struck in the back by a seat press being pushed down the assembly line and sustained injury to his lower back; that he reported to the plant dispensary shortly thereafter and informed Katherine Cronen, who was employed by General Motors Corporation as a nurse in the plant dispensary, of the fact and nature of his injury and that he was suffering pain in his lower back. He further alleged that a record was made of his complaints and that Miss Cronen examined him and found redness in the area of his back involved and Miss Cronen applied an ice pack to his lower back for 15 to 20 minutes, gave him some medicine for pain, advised him to use heat at home and gave him an appointment to see the company doctor; that the diagnosis at the plant dispensary was contusion of the left lumbar region; that on June 6, 1967, he again appeared at the company dispensary and it was found that he had spasm of the lumbar spine and he was given a muscle relaxant known as "Maolate;" that on June 9, 1967, he again was seen at the plant dispensary, reiterated his complaints of back pain and was given an appointment for June 10, 1967; that on June 10, 1967, and also on June 20, 1967, he again appeared at the dispensary and Miss Cronen, in her individual capacity and acting also as agent for the employer, gave him a pill, representing to him at the time that it was pill to relieve his pain, with the knowledge, orders and consent of the defendant corporation. Plaintiff further alleged that Miss Cronen and the corporate defendant, at the time she made this representation to plaintiff that the pill was a pain pill, knew that said representation was false and that the pill given to him was a placebo of sugar glucose with no medicinal value at all and containing no pain relieving ingredient whatsoever,

and that plaintiff relied upon the fact that it was a pain pill. He further alleged that he had no knowledge of the fact that he was receiving a placebo and believed the false representation made to him by Miss Cronen that the pill was a pain pill and that he had a right to rely upon the representation as made to him by Miss Cronen, and that he did rely thereon. He alleged that he would not have taken the pill had he known that it was a sugar pill and not a pain pill and he was thereby misled, tricked and defrauded by Miss Cronen and his employer.

Plaintiff's Second Amended Petition continued that as a direct result of this deception he was caused to have a continuous amount of pain and muscle spasm in the lower back, whereas if the pill had been a pain pill, as represented by the defendants, it would have relieved the back pain he was experiencing and the muscle spasm resulting therefrom. He sought actual damages "for the pain and suffering he was falsely permitted to endure by reason of the false pain pill" against both defendants in an amount of $1,000.00, and further prayed for punitive damages against General Motors Corporation in an amount of $50,000.00 and against Katherine Cronen in an amount of $1,000.00.

Counts II, III, IV and V adopt the allegations heretofore set out and plead separate Counts for the dispensing of a placebo on each of five separate dates, being, July 5, 1967, July 6, 1967, August 29, 1967, and January 15, 1968, respectively. In each separate Count he seeks the same specified amount of actual and punitive damages against each of the defendants as prayed for in Count I, totalling $5,000.00 actual and $250,000.00 punitive damages against General Motors Corporation and $5,000.00 punitive damages against Miss Cronen.

Defendants filed a joint answer admitting much of Mr. Jurcich's allegations contained in his Second Amended Petition, including the dispensing of the placebos by the plant physician, etc.

■ Many of the facts in this case are not actually disputed. In reviewing the

question whether appellant made a submissible case in the trial court and whether the trial court erred in sustaining defendants' motion for directed verdict at the close of plaintiff's evidence, we must consider the evidence from the viewpoint most favorable to the plaintiff and give him the benefit of every reasonable inference which the evidence tended to support. *Mathes v. Trump,* 458 S.W.2d 297, 298[1] (Mo.1970). Viewed in this light we find that the evidence developed at trial is that appellant sustained an injury to his low back arising out of and in the course of his employment when he was struck in the back by a seat press on June 5, 1967, and that he shortly thereafter went to the plant dispensary operated by his employer, General Motors Corporation, where he made known the fact of the accident and the nature of his complaints to Miss Cronen, a registered nurse in the employ of General Motors Company in the plant dispensary; that Miss Cronen examined him and noticed a redness in the area of appellant's low back, applied an ice pack to this area for 15 to 20 minutes, gave him two aspirins and furnished him with an additional twelve aspirins to take with him, and directed him to take one aspirin every four hours as needed for pain; that on June 6, 1967, appellant returned to the dispensary where he "thought" he saw Miss Cronen and she again gave him some medicine to relieve his pain. On both of these occasions the medicine given to him afforded him some relief from his pain.

Appellant further testified that on June 9, 1967, he returned to the plant dispensary and asked the nurse if he could see the doctor. On June 10, 1967, he saw Dr. Patient, the plant physician,[1] and the doctor gave him some medicine which did not relieve the pain very much.[2] Appellant's next visit to the dispensary was on June 20, 1967, when he saw a nurse, who she was he could not say,[3] and asked for something for pain.

He was given a capsule and, relying on the fact that he had requested something to relieve him of the pain he was experiencing in his low back, he took the capsule expecting it to give him relief from his pain.

On June 21, 1967, appellant visited a private physician, Dr. Hill, because his back was still bothering him, and Dr. Hill prescribed a one week supply of Robaxisal-PH, a muscle relaxant with phenobarbital.

On July 5, and 6, 1967, appellant returned to the plant dispensary complaining of back pains and on each of these occasions he was given a pill or a capsule, neither of which afforded him any relief for his pain. The records of the dispensary record that the medication dispensed on both of these dates were placebos. The placebos dispensed on July 5, 1967, were delivered to the appellant by a nurse, Elizabeth Lackey, and those on July 6, 1967, by nurse, Glenda Tippett. Around the middle of July a "model change layoff" occurred and as a result of this layoff appellant did not return to work until approximately the third week in August. About one week after appellant had returned to work he again went to the plant dispensary on August 29, 1967, seeking some relief for his aching back. On this occasion Miss Cronen dispensed the pills which admittedly were placebos.

On September 5, 1967, appellant went on sick leave, and on the next day he visited Dr. Cole, an associate of Dr. Hill, and Dr. Cole observed marked muscle spasm in the lower dorsal area of appellant's back, indicative of the fact that appellant was still experiencing pain in that region. Dr. Cole prescribed robaxin and phenaphen with codeine and recommended that appellant wear a back brace and not work for a month.

On October 11, 1967, appellant returned to work. Between October 15 and 25, 1967, he was hospitalized in St. Elizabeth's Hospi-

---

1. Dr. Patient had died by the time of trial.

2. The dispensary records conflict with these dates. They reflect that these visits were made by the appellant to the dispensary on June 19, and 20, 1967, respectively.

3. Throughout the testimony of appellant concerning the dispensing of placebos to him, in more than one instance he was uncertain as to the nurse who actually gave him the pills.

tal where he was placed in traction and given heat massage and exercise for his back. On January 2, 1968, he returned to work wearing a back brace. Again on January 15, 1968, he went to the plant dispensary, requested some medicine for pain and was given what he thought was a pain pill, by Miss Cronen. What he actually received was a placebo.

Appellant filed a claim with the Workmen's Compensation Commission for his back injury and this claim was heard sometime in January, 1971. He was awarded a 20% permanent partial disability rating by the referee. At this hearing on his Workmen's Compensation Claim, appellant learned for the first time that some of the medications he had received from the plant dispensary included the placebos mentioned above.

At trial, appellant attempted to introduce evidence testimony relative to the bills of Dr. Hill and Dr. Cole. Respondents objected on the ground that these bills were covered by the Workmen's Compensation award and the objection was sustained. An offer of proof was made that if the witness was permitted to testify his answer would be that he paid $100.00 to the doctors "for the treatment rendered him by them." An objection to the offer of proof on the grounds that it was irrelevant and immaterial was made and sustained. There was no evidence in the case that appellant paid for or became obligated to pay for any of the services or medicines afforded him by General Motors Corporation through the plant dispensary.

Respondents, at the close of appellant's case, filed a Joint Motion for a Directed Verdict on the following grounds: 1) appellant's claim was barred by the 2 year statute of limitations § 516.140 RSMo; 2) that any action appellant might have against the respondents has been barred by operation of the Workmen's Compensation Law, §§ 287.010 et seq. RSMo; 3) appellant has failed to introduce any evidence that he suffered a pecuniary loss as a result of the alleged misrepresentations of the respondents; 4) appellant failed to show that the respondents, or either of them, did anything illegal; 5) appellant has failed to show that the respondents made any misrepresentation to him; 6) appellant's evidence has failed to show that he suffered any substantial damage as a result of any alleged misrepresentations made by the respondents; 7) appellant's evidence has failed to show that the alleged misrepresentations related to existing fact rather than an opinion relating to a future happening; and 8) appellant has failed to show that if he had been given a different kind of prescription he would have suffered less pain than he did after ingesting materials given to him by Nurse Cronen.

After hearing argument of counsel on the merits of the Motion in chambers, the trial court entered judgment sustaining respondents' Motion "on grounds 3, 5, 6 and 8" and ordered the jury discharged and the costs assessed against the appellant.

On appeal the appellant contends that the trial court erred in directing a verdict for the respondents because (a) pain and suffering is a specific element of damages under the law; (b) that appellant did not have to prove that "true medication" instead of placebos would have relieved appellant's pain; (c) the evidence did show that the respondents represented that what they were giving him would stop his pain; and (d) having shown pain and suffering as an element of actual damages, appellant was entitled to submit punitive damages.

Respondents, in replying to appellant's contentions, initially assert that even if the trial court assigned an insufficient or erroneous reason for directing a verdict for the respondents, the judgment will be affirmed if its ruling was correct. They then reiterate the eight grounds contained in their Motion for Directed Verdict filed at the close of the plaintiff's case as reasons why this judgment should be affirmed on appeal.

Appellant contends here, as he did in the trial court, that his cause of action is one sounding in fraud and denies that it is a malpractice case. He argues that that is the theory upon which he tried the case,

and it is clear from a reading of the record that is the theory upon which the trial court proceeded and was the basis upon which it sustained respondents' Motion. As we understand appellant's theory of this case, it is, that he may in an action in fraud and deceit, recover actual and punitive damages from his employer and a nurse employed by the employer in a company operated dispensary, where a physician employed by the employer to render care and treatment to any employee sustaining an accidental injury arising out of his employment prescribes and the nurse, pursuant thereto, dispenses placebos to the employee without his knowledge, and he receives no relief from the pain and suffering occasioned by the work-connected injury.

We entertain serious doubts that a suit in deceit can be maintained under these circumstances. Neither party to this appeal has cited us to a case on all fours. We believe, however, that the holding in *National Credit Associates, Inc. v. Tinker*, 401 S.W.2d 954, 959[4] (Mo.App.1966) is persuasive. Here, as there, the gist of appellant's action is the alleged wrongful acts or treatment afforded him by the prescribing of placebos by Dr. Patient and the dispensing of same to him by Nurse Cronen under Dr. Patient's directions. " . . . [T]he gravamen of the action is the defendant's improper, careless, negligent or wrongful acts as a physician, . . ."

■ The prescribing of placebos is, in appropriate cases, a recognized form of medical treatment. Dr. Kilian Fritsch, M.D., an orthopedic surgeon, who testified by deposition as a witness for the appellant, identified a placebo as a substitute sometimes given instead of a narcotic or other drugs to a patient who is taking too many pain shots, and which has no effect in relieving a patient's pain except where the "pain is in his head and he is psycho-neurotic." He further testified that a placebo could include inert substances such as lactose capsules, and in some cases even vitamins. Placebos are used on some occasions to find out if a drug is effective or not, he said. He was asked whether he would give a man with muscle spasm in his back and a history of back injury a placebo without disclosing that fact to the man, and he replied: "No, you never tell anyone if you are going to give them a placebo, then you know it won't work. You are hoping that you will fool him." Appellant would have us hold that the mere prescribing and administering of a placebo, without advising the patient that what was being given to him was a placebo with no pain-killing qualities, would amount to deceit on the part of the physician prescribing and administering it. We conclude that is more properly an issue to be determined in a malpractice suit where expert testimony can be developed upon the specific symptoms presented. While there is evidence from Dr. Fritsch that he found no indication for the giving of a placebo to Mr. Jurcich when he saw him, he expressed no opinion that there was any impropriety in Dr. Patient prescribing placebos on the occasions appellant was given same.

■ We likewise discern that appellant's Second Amended Petition contained no allegation that he sustained any pecuniary loss; rather, it alleged that by reason of the fact that he was given a placebo rather than a pain-killing pill he "continued in pain and muscle spasm," because the placebo had no pain-killing effect. One of the essential elements of a cause of action based on fraud or deceit is that the plaintiff suffer injury which is a consequence of and proximately caused by the misrepresentations made to him and upon which he relied. *Ackmann v. Keeney-Toelle Real Estate Company*, 401 S.W.2d 483, 488[4] (Mo.banc 1966). A cause of action for deceit is one which protects the formulation of business judgments without being misled by others. Harper & James, The Law of Torts, Vol. 1, Ch. VII, Misrepresentation and Nondisclosure, Sec. 7.1, p. 527. Not all misrepresentations are the subject of a cause of action sounding in fraud. "In contradistinction with trespass and other direct injuries for which the complainant is awarded nominal damages if he should fail to plead and prove actual damage, deceit belongs to that class

of tort of which pecuniary loss constitutes a part of the cause of action." *Lammers v. Gruelich*, 262 S.W.2d 861, 864[3] (Mo.1953), *Toenjes v. L. J. McNeary Construction Company*, 406 S.W.2d 101, 106 (Mo.App. 1966).

■ Appellant argues, however, that pain and suffering are "actual damages" under the law and are therefore recoverable in an action for fraud and deceit. The authorities he relies on are, for the greater part, cases where damages for personal injuries were the gist of the action. He relies on *Vezina v. Souliere*, 103 Vt. 190, 152 A. 798 (1931), a case where plaintiff, the purchaser of a horse, sued to recover for personal injuries sustained when he was kicked by a horse he had purchased from the defendant. He alleged that defendant had represented to him that the horse was gentle and did not kick. The Vermont court, by way of dicta, said that in an action for fraud under those facts, damages for personal injuries are recoverable "under proper allegations and proof." The courts of this state follow the rule that in cases of fraud and deceit the defendant is responsible for those results, injurious to the plaintiff, which must be presumed to have been within defendant's contemplation at the time of the perpetration or commission of the fraud, and that plaintiff may recover for any injury which is the direct and natural consequence of plaintiff's acting on the faith of the defendant's false representations. In those circumstances the plaintiff is not limited to general damages, but he also may recover special damages which have proximately resulted from the fraud. *Salmon v. Brookshire*, 301 S.W.2d 48, 56[11] (Mo.App.1957); *Miller v. Higgins*, 452 S.W.2d 121, 125 (Mo.1970).

■ "Pain and suffering" are recoverable as damages in those cases where there has been a personal injury and the pain and suffering are the proximate result of the defendant's wrongful act causing the injury, and which necessarily and inevitably result from the injury. *Southern Pac. Co. v. Hetzer*, 135 F. 272, 274[1] (8th Cir. 1905), 22 Am.Jur.2d Damages § 196. Assuming arguendo that the failure of the placebos to relieve appellant of the pain and suffering he was experiencing from the injury he sustained on the job constitutes the pain and suffering recoverable in a suit for personal injuries, the question then becomes, are they also a pecuniary loss essential to support a cause of action in deceit. We conclude under the facts presented here they are not. When appellant went to the plant dispensary seeking relief from his pain and suffering due to the injury to his back, he already had that pain and suffering. There is not a scintilla of evidence in this record that by the dispensing of placebos to him his back injuries were worsened nor that any new injuries resulted. He simply obtained no relief from his pain. Even in the *Vezina* case, supra, relied upon by appellant, plaintiff alleged that he sustained personal injuries by reason of the misrepresentation of the defendant as to the docile character of the animal plaintiff had purchased from the defendant. It was in that context that the Vermont court said that damages for personal injuries might have been obtained if properly pled and proven. Here, there is no evidence that the pain appellant continued to suffer after taking the placebos worsened nor that they contributed to lengthen the period of recovery as evidenced by the Workmen's Compensation referee's award of 20% permanent disability. There is no causal connection whatsoever shown between the dispensing of placebos and appellant's pain and suffering so that it would constitute a natural consequence of proximate result of the misrepresentations, if such they were.

■ Appellant chose to proceed on the theory of fraud and deceit, and despite the fact we have serious reservations that such a cause of action is available to him under the facts of this case, having done so, he has failed to prove one of the essential elements of a cause of action in deceit, i. e., that he sustained a pecuniary loss. He attempts to avoid this infirmity by arguing that the trial court erred in excluding his testimony that Drs. Hill and Cole charged him $100 for the treatment rendered him, and he was

thereby precluded from proving any pecuniary loss. At the time this question was asked, respondents' counsel objected on the grounds that those charges were covered in the Workmen's Compensation claim and were immaterial and irrelevant to any issues in the case. The objection was sustained and appellant made his offer of proof. The objection to the offer of proof was that it was irrelevant and immaterial to any issues in the case and the objection to the offer of proof was sustained. Not only was there no allegation in the petition relative to medical and doctor bills, but there is no evidence in this record that these charges were for any matters proximately caused by the deceit alleged. Appellant argues that he had to go to the private doctors because the company doctor did not treat him nor give him relief from his pain and suffering by reason of the fact that he was given the placebos rather than pain killing drugs; that, therefore, these bills are proper. However, even assuming that to be true, there is no evidence in this case that the giving of the placebos was not proper medical procedure under the circumstances existing at the time they were given and, therefore, constituted a wrong. Admittedly, if Doctor Patient or those nurses who dispensed the placebos to the appellant under the direction of the plant physician, revealed to him at the time that the pills were in fact placebos and not pain relief pills, the very purpose for using the placebo would have been defeated. In the absence of any evidence that the use of the placebos was improper and constituted an unlawful misrepresentation which would support a cause of action founded upon deceit, the fact that the appellant withdrew himself from the plant physician's treatment and underwent treatment by a private physician of his own choosing would not, in our opinion, render the bills he sought to introduce into evidence here material and relevant to the issues as framed by the pleadings.

We hold therefore that the trial court correctly ruled respondent's Motion for Directed Verdict at the close of the appellant's case. We do not consider the other points raised by either of the parties inasmuch as they are unnecessary to our decision.

We affirm.

SMITH, P. J., and CLEMENS, J., concur.