IN THE SUPREME COURT OF NORTH CAROLINA

No. 28A23

Filed 22 March 2024

ANTHONY TERRY

v.

PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INCORPORATED, and
WILLIAM V. LUCAS

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of
the Court of Appeals, 287 N.C. App. 362 (2022), reversing an order entered on 21
September 2021 by Judge Orlando F. Hudson Jr. in Superior Court, Durham County,
and remanding the case. Heard in the Supreme Court on 8 November 2023.

> *Poyner Spruill LLP, by Steven B. Epstein; and Hendren Redwine & Malone,*
> *PLLC, by J. Michael Malone, for plaintiff-appellee.*
>
> *Haywood, Denny & Miller, LLP, by Robert E. Levin, for defendant-appellants.*
>
> *Katharine Woomer-Deters, Isaac W. Sturgill, Celia Pistolis, Rick Glazier,*
> *Charles R. Holton, Jesse Hamilton McCoy II, Jennifer Simmons, and Kathryn*
> *A. Sabbeth for Blanchard Community Law Clinic, Duke Civil Justice Clinic,*
> *Legal Aid of North Carolina, North Carolina Equal Justice Alliance, The North*
> *Carolina Justice Center, and Professor Kathryn A. Sabbeth, amici curiae.*
>
> *Harris, Creech, Ward & Blackerby, P.A., by A. Ruthie Sheets; and Jay C.*
> *Salsman for the North Carolina Association of Defense Attorneys, amicus*
> *curiae.*

BARRINGER, Justice.

In this matter, we consider whether the Court of Appeals erred in reversing

and remanding the trial court's entry of summary judgment in favor of defendant on

-1-

plaintiff's claims of common law negligence, negligence per se, violation of the Residential Rental Agreements Act, and breach of the implied warranty of habitability. Upon careful review, we hold that the Court of Appeals erred. Therefore, we reverse the decision of the Court of Appeals on all claims.

## I.    Factual Background

On 15 September 2005, plaintiff's wife entered into a written lease agreement for the rental of a single detached residential property located in Durham, North Carolina, owned by defendant, William Lucas. At the time of the lease, the home had a crawl space where the water heater and furnace were located, just below the home's bathroom.

In January 2017, plaintiff and his wife were away from home when they received a telephone call from plaintiff's brother-in-law. Plaintiff's brother-in-law informed plaintiff that the Public Service Company of North Carolina (PSNC) and the fire department were at plaintiff's home investigating a neighbor's report of smelling natural gas near plaintiff's home. In March 2017, plaintiff smelled natural gas while he was standing in the front yard of his home. Also in March 2017, a neighbor told plaintiff that she smelled natural gas around plaintiff's home. Yet again in March 2017, PSNC and the fire department responded to plaintiff's home in response to another report of the smell of natural gas outside, in the area surrounding plaintiff's home. Plaintiff did not inform defendant of any of the above instances of smelling natural gas, and defendant was not aware of any of the above occurrences.

On 13 April 2017, plaintiff entered the bathroom in his home and turned on the light. Immediately upon switching on the light, there was an explosion. As a result of the explosion, plaintiff suffered serious burns all over his body, requiring extensive medical treatment.

Examination of the property after the explosion revealed that the pipe supplying natural gas to the furnace was severely rusted and corroded. Defendant had not inspected the furnace or any other part of the property since plaintiff and his family occupied the property. Defendant did not inspect the furnace prior to plaintiff occupying the property.

Plaintiff and defendant spoke frequently during the course of plaintiff's lease. Throughout the course of the lease, defendant regularly asked plaintiff if there were any problems with the property. Plaintiff would respond that everything was "fine."

During the course of plaintiff's long tenancy of the property, a hole had developed in the bathroom flooring, above the furnace located in the crawlspace. The hole measured approximately ten to twelve inches long and an inch and a half wide. Plaintiff's expert witness, a metallurgist, opined that water had been leaking from the bathroom above onto the furnace pipe for approximately seven years, causing severe corrosion of the piping. Plaintiff was aware of this hole and did not provide notice to defendant regarding the hole or the water leak that caused the hole. Plaintiff never expressed to defendant that there were any issues with the furnace, the flooring, or unrepaired water leaks.

## II.    Procedural History

Plaintiff filed a complaint against defendant and PSNC seeking damages for the personal injuries he sustained from the gas explosion in the home he leased from defendant. Following discovery, plaintiff amended his complaint twice, ultimately asserting four claims against defendant Lucas: common law negligence, negligence per se, violation of the North Carolina Residential Rental Agreements Act (RRAA), and breach of the implied warranty of habitability. All claims against defendant PSNC were dismissed, leaving Lucas as the sole defendant.

The trial court granted defendant's motion for summary judgment, dismissing all of plaintiff's claims. Plaintiff timely appealed to the Court of Appeals. The Court of Appeals issued a majority opinion reversing the trial court's order and remanding the case to the trial court, with Judge Carpenter dissenting. *Terry v. Pub. Serv. Co. of N.C.*, 287 N.C. App. 362 (2022). Defendant filed an appeal with this Court based upon Judge Carpenter's dissent, pursuant to N.C.G.S. § 7A-30(2).

## III.    Standard of Review

"We review a trial court's order for summary judgment de novo . . . ." *Robins v. Town of Hillsborough*, 361 N.C. 193, 196 (2007).

> While summary judgment is rarely appropriate in cases involving negligence and contributory negligence, summary judgment is appropriate in such cases when the moving party carries his initial burden of showing the nonexistence of an element essential to the other party's case and the non-moving party then fails to produce or forecast at hearing any ability to produce at trial evidence of such essential element of his claims.

*DiOrio v. Penny*, 331 N.C. 726, 729 (1992) (footnote omitted); *see also Collingwood v. Gen. Elec. Real Est. Equities, Inc.*, 324 N.C. 63, 66 (1989). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2023).

## IV. North Carolina Common Law

Prior to the enactment of the RRAA, codified in part by N.C.G.S. §§ 42-38 to -49, North Carolina common law established that, "[o]rdinarily, the landlord is under no duty to make repairs." *Robinson v. Thomas*, 244 N.C. 732, 736 (1956). The common law also established the standard that a tenant must meet to have an actionable claim against his landlord for tortious injury. He must show that there was a dangerous hidden defect on the premises, of which the landlord knew or should have known, and of which the tenant was unaware or could not, through ordinary diligence, discover. *Id.* "If the landlord [was] without knowledge at the time of the letting of any dangerous defect in the premises, [the landlord was] not responsible for any injuries which result from such defect." *Id.* (quoting *Harrill v. Sinclair Refin. Co.*, 225 N.C. 421, 425 (1945)).

Prior to enactment of the relevant statutes, "the doctrine of *caveat emptor* applie[d] to the lessee." *Id.* (quoting *Harrill*, 225 N.C. at 425). Aside from hidden dangers in existence at the time of leasing, of which the landlord knew or should have

known, and of which the tenant did not and should not have known—the landlord had no responsibility to provide any level of habitability in the leased space. *See id.* Stated another way, the common law imposed no duty on the landlord to oversee the condition of the property after the tenant occupied the space, and no duty to make necessary repairs that arose. *See id.*

## V.    Relevant Statutes

The RRAA, enacted in 1977, codified the implied warranty of habitability. After codification of the RRAA, all common law "not abrogated, repealed, or . . . obsolete" remained "in full force." *Conley v. Emerald Isle Realty, Inc.*, 350 N.C. 293, 296 (1999) (quoting N.C.G.S. § 4-1 (1986)); *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 318–19 (2012) (explaining that a statute should be construed to alter the common law only when that disposition is clear).

The statutory lattice of the RRAA overlays the common law backdrop. The common law, as stated in *Robinson*, is changed only where the RRAA's departure from common law is clearly expressed. *See* Scalia & Garner at 319 ("[A]ny legislative change of the common law requires 'exactness of expression' and . . . a statute should not 'be extended beyond the necessary and unavoidable meaning of its terms.'" (quoting *Scharfeld v. Richardson*, 133 F.2d 340, 341 (D.C. Cir. 1942))).

The RRAA, in relevant part, reads as follows:

(a)    The landlord shall:

(1)   Comply with the current applicable building and housing codes, whether enacted before or after October 1, 1977, to the extent required by the operation of such codes; no new requirement is imposed by this subdivision (a)(1) if a structure is exempt from a current building code.

. . . .

(2)   Make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.

. . . .

(4)   Maintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord provided that notification of needed repairs is made to the landlord in writing by the tenant, except in emergency situations.

. . . .

(8)   Within a reasonable period of time based upon the severity of the condition, repair or remedy any imminently dangerous condition on the premises after acquiring actual knowledge or receiving notice of the condition.

N.C.G.S. § 42-42 (2023).

The RRAA abrogates the common law in that it requires a landlord to comply with "current applicable building and housing codes." N.C.G.S. § 42-42(a)(1). The RRAA further abrogates the common law in that it requires a landlord to make repairs, whereas under the common law "the landlord is under no duty to make repairs." *Robinson*, 244 N.C. at 736. The RRAA, having instituted the landlord's duty to repair, also implements a notice requirement and retains the knowledge

requirement found in the common law. *See id.* (holding that a landlord is not liable for injuries a tenant sustains on the leased property "if he did not believe or suspect that there was any physical condition involving danger" (quoting *Harrill*, 225 N.C. at 425)).

The RRAA, subsection 42-42(a)(8), requires the landlord receive notice or obtain actual knowledge of "any imminently dangerous condition on the premises" before being statutorily required to repair or remedy the condition "[w]ithin a reasonable period of time." N.C.G.S. § 42-42(a)(8). Under subsection (a)(8), the landlord is statutorily required to make the necessary repairs when he acquires actual knowledge of the need for the repair—regardless of whether the tenant provides notice. *Id.* Subsection (a)(4) requires an even higher standard of notice— written notice. N.C.G.S. § 42-42(a)(4). Except for emergency situations, which do not afford time for memorialization, subsection (a)(4) requires a tenant to provide written notice of needed repairs to the landlord before the landlord may be found in violation of the RRAA. *Id.*

This Court has previously had the opportunity to review the RRAA and its relationship with the common law. In *DiOrio*, 331 N.C. 726, we recognized the layered landscape of the statutory overlay of the RRAA atop the common law groundwork. In *DiOrio*, a residential tenant brought an action against her landlords to recover for injuries sustained when she fell down the stairs of her leased home. *Id.* at 727. The fall was caused by carpet on the stairs extending beyond the solid underpinning of

the actual stairs beneath. *Id.* at 726–27. In bringing the claim, the plaintiff relied on subsection 42-42(a)(2). *Id.* at 729.[1]

Construing the RRAA, this Court noted that the duty to repair imposed by subsection 42-42(a)(2) "only arises once the tenant notifies the landlord of the need for repairs." *Id.* at 730 (citing N.C.G.S. § 42-42(a)(4) (1984)). As here, the *DiOrio* plaintiff never notified the defendants, the landlords, of a need for repair of the stairs, nor was there evidence that the defendants had any knowledge, actual or implied, that the staircase was dangerous. *Id.* at 729; *see* N.C.G.S. § 42-42(a)(8) (requiring a landlord to repair or remedy, within a reasonable time period, any imminently dangerous condition "after acquiring actual knowledge or receiving notice of the condition," including unsafe flooring or steps).

This Court affirmed the Court of Appeals' holding on the basis that the "plaintiff . . . failed to produce any evidence showing that defendants had actual or implied knowledge" of the problem with the stairs. *DiOrio*, 331 N.C. at 730. This Court also held "that plaintiff had sufficient knowledge of the staircase's narrowness, uneven risers and lack of handrail to place the burden on plaintiff to either correct

---

[1] In *DiOrio*, the Court of Appeals affirmed summary judgment for the defendants on the basis of the plaintiff's contributory negligence because the plaintiff "knowingly expos[ed] herself to a risk of which she had long-term prior notice and which she could have avoided by notifying the landlord." *DiOrio*, 331 N.C. at 728 (citing *DiOrio v. Penny*, 103 N.C. App. 407 (1991)). On appeal to this Court, we did "not disagree as to the Court of Appeals' conclusion regarding plaintiff's contributory negligence. However, we [did] not need to reach [that] question, as we proceed[ed] first to the plaintiff's allegations and projection of evidence regarding defendants' negligence." *Id.* at 728–29.

the problem or inform the defendants of the need for repair." *Id.*

## VI. Analysis

Under the common law, a landlord has no duty to inspect a leased property and no duty to make repairs to a leased property. *Robinson*, 244 N.C. at 736. The RRAA expressly abrogates the common law in that it requires landlords to make repairs after receiving notice or acquiring actual knowledge, depending on the nature of the necessary repair or remedy. N.C.G.S. § 42-42(a)(2), (4), (8). Accordingly, no duty to inspect exists and no duty to repair arises prior to the tenant providing notice to the landlord or the landlord acquiring actual knowledge of the needed repair. The RRAA also requires the landlord to meet certain standards, outlined in the Housing Code, to provide a habitable property. N.C.G.S. § 42-42(a)(1), (2).

## A. Common Law Negligence

This Court considers whether the Court of Appeals erred by reversing the trial court's order granting summary judgment in favor of defendant regarding plaintiff's claim of negligence. We hold that the Court of Appeals erred. Accordingly, we reverse the Court of Appeals on this issue.

The Court of Appeals dissent noted that an inspection of plaintiff's "bathroom may have revealed the gas pipe's condition because in the light most favorable to [plaintiff], it was visible through a hole in the floor, but [d]efendant had no reason and no duty to conduct an inspection." *Terry*, 287 N.C. App. at 380 (Carpenter, J., dissenting). The dissenting opinion points out that the Court of Appeals majority

"invent[s] a duty to inspect . . . an endeavor better suited for the Legislature." *Id.* We agree.

As exemplified by *DiOrio*, section 42-42 softens—but does not completely abrogate—the common law concept of *caveat emptor* regarding repairs and imminently dangerous conditions on leased residential premises. All common law "not abrogated, repealed, or . . . obsolete" remains "in full force." *Conley,* 350 N.C. at 296 (quoting N.C.G.S. § 4-1 (1986)). "[T]he statute requires that a landlord must *have knowledge, . . . or be notified*, of a hazard's existence *before being held liable in tort.*" *DiOrio*, 331 N.C. at 729 (emphases added) (citing N.C.G.S. § 42-42(a)(4) (1984)).

This Court has explained that a tenant, as an occupier of land, stands in the same position as the landowner with respect to standards of care and duties owed to others. *Nelson v. Freeland*, 349 N.C. 615, 617 n.1 (1998). This is because the tenant, as the occupier, is "in a much better position to know about the condition" of the property. *Robinson*, 244 N.C. at 737. Accordingly, the tenant bears the burden to "inform the [landlord] of the need for repair." *DiOrio*, 331 N.C. at 730. The RRAA applies this common law concept to tenants generally. By codifying the notice requirement, the RRAA further highlights the interplay between common and statutory law. *See* N.C.G.S. § 42-42; *DiOrio*, 331 N.C. 726; *Robinson*, 244 N.C. 732. No duty to repair arises until the notice or knowledge requirements of subsections

(a)(4) and (a)(8) are met.[2] N.C.G.S. § 42-42(a)(4), (8).

Statutes are to be read harmoniously in a way that renders them internally compatible, not contradictory. *E.g., Town of Pinebluff v. Moore Cnty.,* 374 N.C. 254, 257 (2020); *Bd. of Adjustment of the Town of Swansboro v. Town of Swansboro*, 334 N.C. 421, 427 (1993); *Town of Blowing Rock v. Gregorie*, 243 N.C. 364, 371 (1956). Subsection (a)(2) of the RRAA refers to "*all* repairs." N.C.G.S. § 42-42(a)(2) (emphasis added). When read harmoniously, "*all* repairs" encompasses the specific repairs of subsections (a)(4) and (a)(8). Under subsection (a)(4), besides emergencies, the landlord's duty to repair arises upon receipt of written notice from the tenant. Under subsection (a)(8) the landlord's duty arises upon the landlord receiving notice from the tenant or acquiring actual knowledge.

Here, plaintiff, as the tenant and occupier of the leased property, had "long-term prior notice," before the 13 April 2017 gas explosion, that there was an issue of some sort with the gas line and with the flooring above the furnace. *See DiOrio*, 331 N.C. at 728. The record contains evidence that there was a hole in the bathroom floor, adjacent to the commode, measuring approximately ten to twelve inches long and an inch and a half wide, directly above the furnace. This hole developed over time, while plaintiff resided in the property. Plaintiff was aware of the hole. Expert testimony indicated that water leaked through this hole onto the furnace piping for

---

[2] If a landlord has a duty to maintain, in good and safe working order, certain components as designated in subsection (a)(4), nowhere in this opinion does this Court say that such a duty only arises upon written notice.

approximately seven years, leading to the corrosion and deterioration of the furnace piping.

In January 2017, the neighbor living directly adjacent to plaintiff smelled gas coming from plaintiff's home. The neighbor was so concerned that she called the gas company. Because plaintiff was away from home, the neighbor also called plaintiff's brother-in-law in January 2017 to tell him that she was concerned about the smell of gas. Plaintiff's brother-in-law told plaintiff's wife, who told plaintiff, about the neighbor's concerns and that the fire department and gas company were at plaintiff's home. Plaintiff testified that he was aware that the gas company and fire department had come to the home in January 2017 after receiving reports of the smell of gas coming from the home. Plaintiff was at home in March 2017 when the fire department and gas company came to the house again after an additional report from a neighbor who smelled gas coming from the home. On yet another occasion, in March 2017, plaintiff "got a pretty good whiff" of natural gas while standing in the front yard of his home. Plaintiff was warned by a neighbor on "a couple of occasions" in March 2017 that the neighbor was smelling gas coming from the house.

Plaintiff did not present any evidence that he or anyone else had ever informed defendant of the hole in the bathroom floor or requested a repair. Plaintiff never told defendant about any of the occasions, between January and the April explosion, that the fire department or the gas company had come to the house to investigate reports of a gas leak. The record presents no evidence that defendant knew there was a

problem with the flooring or that there was a suspected gas leak.

Without a showing of notice or defendant's knowledge, plaintiff cannot maintain an action for negligence because defendant's duty under N.C.G.S. § 42-42 had not yet arisen. The "pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that [defendant] is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). Plaintiff failed to "produce or forecast at hearing any ability to produce at trial evidence" that he notified defendant or that defendant knew of the gas leak. *See DiOrio*, 331 N.C. at 729.

A successful negligence claim requires a plaintiff to prove that the plaintiff was owed a duty by defendant and that defendant breached that duty. *See Cummings v. Carroll*, 379 N.C. 347, 362 (2021). In this circumstance, defendant had no common law duty and the RRAA did not create a duty. Thus, as the movant, defendant fulfilled his "initial burden of showing the nonexistence of an element essential to" plaintiff's claim.[3] *DiOrio*, 331 N.C. at 729. Accordingly, we hold that the Court of Appeals erred in reversing summary judgment in favor of defendant on plaintiff's negligence claim.

## B. Negligence Per Se

This Court considers whether the Court of Appeals erred by reversing the trial

---

[3] Here, defendant raised the affirmative defense of contributory negligence in his pleadings. We decline to address defendant's arguments to this Court on contributory negligence. "[W]e do not need to reach this question, as we proceed first to the plaintiff's allegations and projection of evidence regarding defendants' negligence." *DiOrio*, 331 N.C. at 729.

court's order granting summary judgment in favor of defendant regarding plaintiff's claim that defendant was negligent per se. We hold that the Court of Appeals erred. Accordingly, we reverse the Court of Appeals on this issue.

Subsection 42-42(a)(1) provides that the landlord shall "[c]omply with the current applicable building and housing codes." N.C.G.S. § 42-42(a)(1). Similarly, in *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412 (1990), this Court analyzed the duty to comply with applicable building codes. The plaintiff in *Lamm* brought claims against the defendants, including a negligence per se claim, seeking damages after she slipped and fell as she descended a set of stairs outside an office building owned by two of the defendants. *Id.* at 413. The alleged violation was a lack of a handrail and disparity in step height. The disparity in step height led to a deeper drop between the last step and the ground as compared to the previous steps. *Id.* at 414. The plaintiff argued that the defendants were negligent per se because the building violated two sections of the applicable building code. *Id.* at 415.

Reversing the Court of Appeals, this Court held that the plaintiff had "not shown that defendants [were] negligent *per se* for a violation of the [building c]ode because plaintiff made no showing that . . . the [defendants] . . . knew or should have known of the violation of the [building c]ode." *Id.* This Court further held that "the owner of a building may not be found negligent *per se* for a violation of the Code unless: (1) the owner knew or should have known of the Code violation; (2) the owner failed to take reasonable steps to remedy the violation; and (3) the violation

proximately caused injury or damage." *Id.*

Applying the sound reasoning set forth in *Lamm*, we hold that a landlord "may not be found negligent *per se* for a violation of the [applicable housing code] unless: (1) the owner knew or should have known of the [housing code] violation; (2) the owner failed to take reasonable steps to remedy the violation; and (3) the violation proximately caused injury or damage."[4] *Id.*

Here, plaintiff argues that he presented evidence sufficient for a jury to conclude that defendant knew or should have known that the leased property was in violation of the housing code. However, plaintiff presented no evidence that defendant knew there was natural gas leaking from the furnace. Plaintiff presented no evidence that defendant knew there was a problem with the flooring. Plaintiff presented no evidence that he notified defendant of any of these issues so that defendant should have known there was a violation of the housing code.

The record reveals that defendant had no knowledge of and received no notice that there was an issue with the furnace or the flooring, affording him no opportunity to take reasonable steps to remedy a violation. The purpose of the housing code is to "cause the repair and rehabilitation . . . of such housing," Durham, N.C., Ord. No.

---

[4] We acknowledge the Court's holding in *Lamm*—that the trial court had erred by granting summary judgment in favor of the defendants because the plaintiff had presented sufficient evidence to make out a prima facie case of defendants' common law negligence. The *Lamm* Court went on to analyze the relationship of the plaintiff and the defendant in the context of invitee and owner. The invitee, licensee, trespasser trichotomy does not apply in the instant case.

14271, § 2, 6-4-2012, Sec. 10-231 (2012), not to serve as a strict liability statute against landlords.

For the reasons stated above, we hold that the Court of Appeals erred in reversing summary judgment in favor of defendant on plaintiff's claim that defendant was negligent per se.

## C. Violation of the RRAA

This Court considers whether the Court of Appeals erred by reversing the trial court's order granting summary judgment in favor of defendant regarding plaintiff's claim that defendant violated the RRAA. We hold that the Court of Appeals erred. Accordingly, we reverse the Court of Appeals on this issue.

As discussed above in section VI(A) and (B) of this opinion, section 42-42 is to be read as a whole, with each subsection in harmony with the others. Specifically, subsection (a)(2) is to be read in harmony with subsection (a)(1), referencing the housing codes, and with subsections (a)(4) and (a)(8), referencing repairs. "Whatever is necessary" is language broad enough to encompass the requirements of each of these subsections when read harmoniously. *See* N.C.G.S. § 42-42(a)(2). It is not a codified requirement for a landlord to stop at nothing to comply—such as regular inspections to find violations. "Whatever is necessary" leaves room for the multitude of requirements detailed within the RRAA and the building and housing codes, incorporated into a landlord's responsibility by subsection (a)(1).

For example, subsections (a)(5) and (a)(7) require a landlord to provide smoke

detectors and carbon monoxide alarms; subsection (a)(6) requires a landlord to notify the tenant (if the landlord has actual knowledge) of water contamination levels exceeding an established limit. Providing smoke detectors, providing carbon monoxide alarms, and notifying tenants of water contamination are not repairs—but rather stipulations of *what is necessary* to comply with the statute.

The Durham housing code requires a landlord to comply with various standards such as providing clean equipment and ensuring adequate ventilation for fuel-burning appliances. *See* Ord. No. 14271, § 2, 6-4-2012, Sec. 10-234(a)(2)(c)–(d) (2012). "[W]*hatever is necessary* to put and keep the premises in a fit and habitable condition" may require something other than repair. *See* N.C.G.S. § 42-42(a)(2) (emphasis added). "Whatever is necessary" may be an alteration or something else. *See id.*

As analyzed in section VI(A) of this opinion, plaintiff has presented no evidence that he notified defendant of any issues with the flooring, the heating system, or the natural gas utilities, or that defendant had any actual knowledge of any such issues. As analyzed in section VI(B) of this opinion, and as required under *Lamm*, plaintiff has presented no evidence that defendant had the requisite knowledge or should have known that he was in violation of the Durham housing code. *See Lamm*, 327 N.C. at 415. Therefore, summary judgment in favor of defendant was not error. Accordingly, we reverse the decision of the Court of Appeals on this issue.

**D. Breach of Implied Warranty of Habitability**

This Court considers whether the Court of Appeals erred by reversing the trial court's order granting summary judgment in favor of defendant regarding plaintiff's claim that defendant breached the implied warranty of habitability. We hold that the Court of Appeals erred. Accordingly, we reverse the Court of Appeals on this issue.

In reversing the trial court's order, the Court of Appeals relies on *Surratt v. Newton*, 99 N.C. App. 396 (1990). Misreading *Surratt*, the Court of Appeals made the implausible leap that because only subsection (a)(4) requires written notice, subsection (a)(2) "places an affirmative obligation on landlords to 'do whatever is necessary to put and keep the premises in a fit and habitable condition.' " *Terry*, 287 N.C. App. at 375 (majority opinion) (quoting N.C.G.S. § 42-42(a)(2)). While we agree that written notice is required only in the circumstances of repair contemplated in subsection (a)(4), our agreement stops there.

As an initial matter, in no way does *Surratt* hold that there is an "affirmative obligation on landlords to 'do whatever is necessary to put and keep the premises in a fit and habitable condition' " without knowledge or notice. *Compare id.*, *with Surratt*, 99 N.C. App. at 405–06. The salient issue before the *Surratt* court was whether the plaintiff presented sufficient evidence of notice to the landlord such that a jury must determine whether the landlord had a reasonable opportunity to repair. Finding that the tenant provided sufficient notice, albeit oral notice, the *Surratt* court held that the plaintiff's claim was rightfully presented to the jury. *Surratt*, 99 N.C.

App. at 406.

While not binding precedent upon this Court, *Surratt* is instructive. A close reading of *Surratt* reveals that the statute requires that a landlord must receive notice of necessary repairs and have reasonable opportunity to repair before the landlord is liable for applicable housing code violations. As analyzed in subsections VI(A), (B), and (C) of this opinion, the record reveals that plaintiff presented no evidence that he provided defendant with notice of a problem with the flooring or the furnace, so as to render defendant in violation of N.C.G.S. § 42-42 or the housing code.

We agree with the Court of Appeals dissenting opinion that when repair is necessary to keep a premises in a fit and habitable condition, this "does not obviate the requirement that a tenant must give notice to the landlord of the repair that is needed." *Terry*, 287 N.C. App. at 384 (Carpenter, J., dissenting). Here, plaintiff has presented no evidence that he provided the landlord with any notice of any needed repairs. Thus, summary judgment in favor of defendant was not error. Accordingly, we reverse the decision of the Court of Appeals on this issue.

## VII.    Conclusion

We reverse the decision of the Court of Appeals on all of plaintiff's claims. The trial court's order granting summary judgment in favor of defendant is reinstated. The matter is dismissed.

REVERSED.

Justice RIGGS dissenting.

The majority endorses the trial court's grant of summary judgment, establishing that a landlord has no duty, absent a written request, to provide regular maintenance of potentially dangerous housing components to keep rental premises in good and safe working order. However, I read the Residential Rental Agreements Act (RRAA), codified as N.C.G.S. §§ 42-38 to 49, as legislatively creating a duty for landlords to "[m]aintain in good and safe working order . . . all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances." N.C.G.S. § 42-42(a)(4) (2023). This duty is *in addition* to the duty to "promptly repair" the same systems and does not require written notice by the tenant. *See id.* Because the record demonstrates genuine issues about whether this landlord was negligent in the duty to maintain in "good and safe" working order the gas-fired furnace and associated gas piping, I would affirm the Court of Appeals' holding as to a duty created by the RRAA.[1] I would entrust to a jury the questions of whether this landlord negligently breached the duty and whether that breach, if found, was the proximate cause of Mr. Terry's life-altering burns. For that reason, I respectfully dissent.

---

[1] Because I would hold this matter should proceed to trial based on the statutory imposition of a duty by the RRAA, I do not reach the issues addressed in the majority on common law negligence, negligence per se, or breach of the implied warranty of habitability.

"Summary judgment provides a drastic remedy and should be cautiously used so that no one will be deprived of a trial on a genuine, disputed issue of fact." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518 (1972). In negligence cases, summary judgment "should rarely be granted." *Moore v. Crumpton*, 306 N.C. 618, 624 (1982). It is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." N.C.G.S. § 1A-1, Rule 56(c) (2023). We consider these materials in the light most favorable to the non-movant, drawing all inferences in their favor. *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018).

The General Assembly passed the RRAA to codify the rights, obligations, and remedies under rental agreements for dwelling units in North Carolina. N.C.G.S. § 42-38 (2023). Section 42-42 identifies the obligations of the landlord, and subsection (a) delineates eight interrelated elements that constitute the landlord's duty to provide tenants with fit premises. N.C.G.S. § 42-42(a)(1) to (8). The first three subsections apply generally to building and housing code compliance and the need to keep the premises fit and habitable. N.C.G.S. § 42-42(a)(1)–(2). The remaining subsections provide specific requirements: subsection (3) focuses on common areas; subsections (5), (5a), and (7) focus on smoke alarms and carbon monoxide sensors; and subsection (6) addresses water quality. N.C.G.S. § 42-42(a)(3), (5)–(7).

Subsection (a)(4) targets the specific issue of operating mechanical systems that degrade over time and require maintenance, and the General Assembly designed

a specific solution to address this problem. The solution requires two elements: first, the landlord shall maintain in good and safe working order, *and* second, the landlord shall promptly repair. N.C.G.S. § 42-42(a)(4). This reading of the statute gives effect to every word that the General Assembly used. *Nance v. S. Ry.,* 149 N.C. 366, 372 (1908) (recognizing that this Court must interpret a statute as it is written, without adding or omitting words).

The word "maintain" is not defined in the RRAA, but we afford words that are undefined in statutes their plain and definite meaning. *Spruill v. Lake Phelps Volunteer Fire Dep't., Inc.*, 351 N.C. 318, 322 (2000). Indeed, the ordinary definition of the verb "maintain" is to keep something in operating condition. *Maintain*, *The American Heritage College Dictionary* (3d ed. 1993) ("To keep in an existing state; preserve or retain; . . . [t]o keep in a condition of good repair or efficiency."). Under the plain language of this subsection, the landlord has a duty to preserve or retain the condition of electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances. N.C.G.S. § 42-42(a)(4). In short, the statute creates a duty for the landlord to maintain the components identified in subsection (a)(4).

The plain language of subsection (a)(4) does not require the tenant to notify the landlord in writing for maintenance—and that makes sense. Maintenance is a task that homeowners engage in regularly to avoid having to make repairs. The last portion of subsection (a)(4) reads "provided that notification of needed *repairs* is made

to the landlord in writing by the tenant, except in emergency situations." N.C.G.S. § 42-42(a)(4) (emphasis added). Common sense tells us that in a landlord–tenant situation, the tenant would generally be the one most likely to be aware of a repair and would need to communicate that to the landlord, but maintenance is an entirely different obligation. In specifically requiring written notice for repairs, the legislature intentionally excluded maintenance from the requirement, and we cannot impute that requirement to the duty to maintain. *See Campbell v. First Baptist Church of Durham*, 298 N.C. 476, 482 (1979) (citing *Walla Walla City v. Walla Walla Water Co.*, 172 U.S. 1, 22 (1898)) (acknowledging that under the doctrine of *expressio unius est exclusio alterius*, the mention of specific exceptions implies the exclusion of others). We assume that if the General Assembly intended to require written notice by the tenant for regular maintenance, it would have expressly required written notice for maintenance in addition to repairs.

The majority holds that the landlord had no duty to provide preventative maintenance for the gas-fired furnace and its associated piping which may have revealed concerns before the explosion and fire that led to Mr. Terry's injuries because Mr. Terry did not provide notice that a repair was required. However, this interpretation of subsection 42-42(a) of the RRAA, does not give effect to every word of the statute. The majority glosses over the first clause of subsection (a)(4), which by its plain language creates a duty for landlords to *maintain* in good and safe working order "all electrical, plumbing, sanitary, heating, ventilating, air

conditioning and other facilities and appliances." N.C.G.S. § 42-42(a)(4). The foundational principle of statutory construction is that "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209 (1990).

To the extent this Court finds it ambiguous whether the written notice requirement also relates back to maintenance, not just repairs, the application of canons of construction only reinforce the reading of the plain language in this dissent. "[T]his Court does not read segments of a statute in isolation. Rather, we construe statutes *in pari materia*, giving effect, if possible, to every provision." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 188 (2004). N.C.G.S. § 42-42(a)(4) imposes a duty to maintain, in addition to the duty to repair, the equipment and systems identified in subsection (a)(4). The statutory language—"provided that notification of needed repairs is made to the landlord in writing by the tenant, except in emergency situations"—only imputes a requirement of written notice for repairs, not for maintenance. N.C.G.S. § 42-42(a)(4); *see Lunsford v. Mills*, 367 N.C. 618, 623 (2014) ("[I]t is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used.").

The majority relies on *DiOrio v. Penny*, 331 N.C. 726 (1992), for the proposition that a "landlord must have knowledge, . . . or be notified, of a hazard's existence before being held liable in tort." *See id.* at 729. But *DiOrio* addressed the question of a

landlord's duty to repair carpeting on a staircase, a housing component not listed amongst the enumerated components found in N.C.G.S. § 42-42(a)(4). *Id.* *DiOrio* does not consider the landlord's duty to maintain "electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord." *See DiOrio*, 331 N.C. 726; N.C.G.S. § 42-42(a)(4). *DiOrio*'s holding that a tenant must request repair of a hazardous condition created by carpeting on a staircase is inapposite because this case is centrally about the landlord's duty to *maintain* the specific equipment and systems identified in N.C.G.S. § 42-42(a)(4), not simply repair a defect.

This duty to maintain in N.C.G.S. § 42-42(a)(4) does not extend to concealed components. Building codes, with which landlords shall comply per subsection (a)(1), mandate access for equipment such as a furnace that requires maintenance. *See, e.g.*, N.C. State Bldg. Code: Fuel Gas Code § 611.8 (2018) (requiring access to gas-fired furnaces for removing the burner; replacing motors, controls, filters and other working parts; and for inspection, adjustment, and lubrication of parts requiring maintenance). The furnace and associated piping were located in a four-feet-tall crawlspace underneath the home and accessible from the exterior of the home. And the crawlspace provided access to both the gas-fired furnace and associated gas piping for maintenance. That is to say, there appears to be no dispute in this case that the furnace here was in an accessible crawlspace that the landlord had a legal right to

access for maintenance purposes, so this case does not implicate questions about concealed, inaccessible elements.

This statutory duty to maintain, and indeed, the legislature's decision to abrogate the common law to allow it to ensure safe rental housing, does not create the "sky is falling" situation that the dissenting judge at the Court of Appeals catastrophized. *Terry v. Pub. Serv. Co. of N.C.,* 287 N.C. App. 362, 381 (2022) (Carpenter, J., dissenting). This case only presents the question of the duty to maintain, in "good and safe working order," N.C.G.S. § 42-42(a)(4), a gas-fired furnace and associated gas piping, which the landlord, in his own sworn deposition testimony, recognized as equipment requiring maintenance and which the lease allowed him access to maintain. This case simply does not require us to resolve how often maintenance must be performed or answer other questions not presented on the facts here. I would constrain our analysis to the facts presented in this case and avoid speculation on the wide array of hypotheticals presented by the dissenting judge at the Court of Appeals.

Mr. Terry has proffered sufficient evidence at this stage of the litigation to present to a jury the question of whether the landlord was negligent in the duty to maintain in good and safe working order the gas-fired furnace and associated gas piping. In the interrogatories, the landlord admitted to being responsible for management, maintenance, and inspection of the property. In the lease, the landlord specifically reserved the right to enter and inspect the premises at any and all

reasonable times to "maintain said premises in a clean, orderly, and law abiding manner." The deposition testimony indicates that the gas-fired furnace and associated gas piping were located in a crawlspace that was four feet in height, accessible from the exterior of the home, and that the crawlspace was kept unlocked. The landlord admitted in his interrogatories that he did not inspect or maintain the gas-fired furnace and connecting gas piping. Mr. Terry provided expert testimony to establish that the deterioration of the gas pipe took place over years, likely more than seven. The landlord acknowledged in his deposition testimony that heating units typically require maintenance and that the units degrade over time. Further, the landlord conceded that in another one of his six rental properties, he had a problem with a gas-fired furnace, which he resolved by shutting off the gas and replacing the furnace with an electric furnace. Taken in the light most favorable to Mr. Terry, these facts may have provided notice, even though not required, that the type of furnace in this case, at the age it was, required attention that it did not receive in order to keep the system in good working order. Collectively, this evidence constitutes, I believe, evidence sufficient to establish material issues of fact that must be resolved by a fact finder.

The North Carolina General Assembly chose to abrogate the common law *caveat emptor* rule and create a duty for landlords to "[m]aintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances." N.C.G.S. § 42-

42(a)(4). Further, Mr. Terry's proffered evidence, considered in the light most favorable to him, is sufficient to establish disputed material issues of fact. For these reasons, I respectfully dissent.

Justice EARLS joins in this dissenting opinion.